*13-1367-cv*
*Widomski v. State Univ. of N.Y. (SUNY) at Orange, AKA Orange Cnty. Cmty. Coll.*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2013
No. 13-1367-cv

CHESTER WIDOMSKI,
*Plaintiff-Appellant,*

*v.*

STATE UNIVERSITY OF NEW YORK (SUNY) AT ORANGE, AKA ORANGE
COUNTY COMMUNITY COLLEGE,
*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of New York.
No. 09-cv-7517 — Kenneth M. Karas, *Judge.*

SUBMITTED: MARCH 20, 2014
DECIDED: APRIL 8, 2014

Before: STRAUB, SACK, and LOHIER, *Circuit Judges.*

Appeal from an order of the United States District Court for the Southern District of New York (Kenneth M. Karas, *Judge*). We hold that Appellant failed to raise a genuine dispute of fact as to whether Appellee perceived him as being substantially limited in the major life activity of working, and failed to raise a genuine dispute of fact as to whether Appellee's explanation for bringing disciplinary proceedings against him was pretext for retaliation.

Accordingly, we AFFIRM the judgment of the District Court.

---

MICHAEL H. SUSSMAN, Sussman & Watkins, Goshen, New York, *for Chester Widomski*.

HYUN CHIN KIM, Senior Assistant County Attorney, Goshen, New York, *for the State University of New York (SUNY) at Orange, AKA Orange County Community College*.

---

PER CURIAM:

Chester Widomski appeals from the District Court's grant of summary judgment in favor of Defendant-Appellee the State University of New York (SUNY) at Orange, also known as Orange County Community College ("OCCC"), on his claims of discrimination on the basis of a "perceived disability" and

retaliation in violation of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*.

## BACKGROUND

Widomski enrolled as a full-time student in OCCC's two-year Medical Laboratory Technology ("MLT") program in the fall of 2007 in order to become a licensed medical laboratory technician. In fall 2008, Widomski began the clinical portion of the program, a course called Clinical Training I. Widomski was assigned to the Catskill Regional Medical Center, where Rebecca Sander, an employee of the Center (and not OCCC), served as his proctor. As part of the course, students were required to submit weekly clinical summary reports signed by their proctors accompanied by weekly narratives relating to the work performed.

On his third day at the Center, Sander told Widomski that he would not be allowed to draw blood from patients because his hands shook too much. She expressed this view to Rosamaria

Contarino, the chair of OCCC's Laboratory Technology Department, and Contarino agreed. Although Widomski admits that his hands sometimes shake when he is nervous, he denies any physical impairment or disability of the hands.

On October 7, 2008, Contarino met with Widomski to discuss the fact that Widomski had not submitted the required weekly summary reports and narratives. At the meeting, Contarino and Widomski executed an agreement providing that Widomski would submit the required reports and narratives by October 9, 2008, to avoid receiving an "F" in the course. Contarino also informed Widomski that he would not be permitted to participate in the phlebotomy portion of the course because of his shaky hands. Contarino informed Widomski that he remained qualified to graduate from the MLT program and thereafter obtain employment as a laboratory technician, but he would not be permitted to receive a MLT license that would permit him to work in a hospital or in any

other setting where he would need to draw blood from patients. On October 8, 2008, Widomski submitted hematology and urinalysis summary reports to Contarino in accordance with their agreement of the previous day.

On October 27, 2008, Widomski's counsel sent a letter to Contarino asking that she allow Widomski to complete the phlebotomy rotation and denying that he had a disability of the hands.

On the same day, Contarino again reminded Widomski to submit outstanding summary reports. Widomski sent additional hematology and urinalysis forms on November 4, 2008. These forms were almost identical to the forms Widomski submitted on October 8. Widomski's explanation for the similarity is that "Sander . . . refuse[d] to sign new forms, so [he] changed the date of his previously-submitted . . . forms to October 29, 2008, which is the date Sander filled 'yes' and 'Y' in the competency columns on each

respectively." Sanders testified to the contrary that she did not write the "yes" and "Y" for competency.

On November 5, 2008, Contarino initiated disciplinary proceedings against Widomski by referring charges of document falsification to the Vice President of Student Services, Paul Broadie, II. Broadie referred the matter to a Board of Inquiry. Following a formal hearing before the Board of Inquiry, and its determination that he had falsified the documents, Widomski was expelled from the MLT program.

Widomski then brought this lawsuit in the United States District Court for the Southern District of New York. The District Court granted summary judgment to OCCC. It concluded that Widomski had failed to establish that OCCC perceived his shaking hands to substantially limit a major life activity, and granted the motion for summary judgment as to the ADA discrimination claim. *Widomski v. State Univ. of N.Y. (SUNY) at Orange*, 933 F. Supp. 2d 534,

543-45 (S.D.N.Y. 2013) (citing *Sutton v. United Air Lines*, 527 U.S. 471, 490-91, 493 (1999)).

Regarding his retaliation claim, Widomski characterized the protected activity as his attorney's October 27, 2008, letter, and the retaliation as Contarino's referral of the disciplinary matter to Broadie. *Id.* at 545. The District Court concluded that Widomski established his prima facie case, but that Contarino's good faith belief that he had falsified documents was a legitimate, non-discriminatory reason for the disciplinary referral. *Id.* at 549-50. Because Widomski had not presented any evidence that OCCC's "explanation [wa]s a false pretext for a retaliatory motive," the court granted summary judgment for OCCC on the retaliation claim as well. *Id.* at 553.

Widomski appeals.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir.

2010). We conclude that the definition of "disability" in Section 12102 of the ADA applies to all Titles of the ADA. We also conclude that the District Court properly granted summary judgment, and reject Widomski's arguments that genuine factual disputes exist as to whether OCCC perceived him as having a disability within the meaning of the ADA and as to whether OCCC's articulated reason for initiating disciplinary proceedings against him was a pretext for retaliation.

**I.    The definition of "disability" set forth in Section 12102 of the ADA applies to all Titles of the ADA.**

The District Court's holding that the definition of "disability" in the ADA applies to Title II of the ADA is correct. Section 12102 of the ADA provides that "[a]s used in this chapter," "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment;

or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2006).

The "[a]s used in this chapter" language unambiguously incorporates the definition of disability into all Titles of the ADA. Section 12102 is contained in Chapter 126 of Title 42 of the United States Code. Titles I through IV of the ADA are codified as subchapters of Chapter 126. A definition that applies to "this chapter" applies to that chapter's subchapters.

Indeed, the Supreme Court has expressly stated that the ADA's definition of disability applies to all Titles of the Act, and is not meant to be applied only to Title I: "[T]he fact that the Act's definition of 'disability' applies not only to Title I of the Act, which deals with employment, but also to the other portions of the Act, which deal with subjects such as public transportation and privately provided public accommodations demonstrates that the definition is intended to cover individuals with disabling impairments regardless

of whether the individuals have any connection to a workplace."[1] *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 201 (2002) (internal citations omitted), *superseded by statute*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). If the statute's text and the Supreme Court's holding leave any doubt, we have said that the "definition of 'disability' applies to all of the ADA." *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 n.7 (2d Cir. 2003) (internal quotation marks omitted).

As the District Court noted in its opinion below, a line of cases from the United States District Court for the Northern District of New York holds that the definition of "disability" in Section 12102 applies only to Title I of the ADA. *See Lee v. City of Syracuse*, 603 F. Supp. 2d 417, 441 (N.D.N.Y. 2009); *Farid v. Bouey*, 554 F. Supp. 2d 301, 327 n.19 (N.D.N.Y. 2008); *see also Jones v. Fischer*, No. 9:10-CV-1331 (GLS/ATB), 2012 WL 1899004, at *7 (N.D.N.Y. May 1, 2012)

---

[1] The relevant events in this case took place prior to the effective date of the ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3353 (2008), which, among other things, modified the definition of a "perceived disability."

(adopting without comment narrower definition of "disability" from

*Farid*), *adopted by* 2012 WL 1898947 (N.D.N.Y. May 23, 2012);

*Silvagnoli v. Fischer*, No. 9:07-CV-561 (NAM/GJD), 2010 WL 1063849,

at *16 (N.D.N.Y. Mar. 1, 2010) (same), *adopted by* 2010 WL 1063840

(N.D.N.Y. Mar. 22, 2010).  The District Court rejected the suggestion

that the definition of disability applies only to Title I of the ADA, as

do we.

**II.     Widomski failed to demonstrate that OCCC perceived him as having an impairment that substantially limited a major life activity.**

To establish discrimination based on a perceived disability

under the version of the ADA in effect during the period at issue in

this case, a plaintiff must show that he is regarded as having an

impairment that "substantially limits" a major life activity.  *See*

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999), *superseded by*

*statute*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat.

3553 (2008).  Widomski argues that the statements and actions of

Sander, who is not an employee of OCCC, and Contarino, the

Department Chair of OCCC's MLT Department, demonstrate that OCCC perceived him as having a shaky hands impairment that "substantially limits" him in the major life activity of working—in other words, that renders him "unable to work in a broad class of jobs." *Id.* at 491. Specifically, Widomski points to Sander's decision to prevent him from performing phlebotomy procedures during his clinical rotation at her medical clinic, and Contarino's support for Sander's decision.

There is no record evidence that Contarino or any other OCCC employee believed that Widomski's shaky hands excluded him from a broad class of jobs. To the contrary, Contarino told Widomski that he would still be employable as a medical technician, and testified that many hospitals and clinics hire medical technicians for jobs that do not require phlebotomy. Widomski fails on this record to raise a genuine dispute of fact as to whether OCCC

perceived him as being substantially limited in the major life activity of working and thus as having a disability under the ADA.[2]

### III. Widomski failed to demonstrate that OCCC's explanation for its decision to bring disciplinary proceedings against him was pretext for retaliation.

"Claims for retaliation [under the ADA] are analyzed under the same burden-shifting framework established for Title VII cases." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). For substantially the reasons set forth in the District Court's Opinion and Order entered March 21, 2013, we agree that Widomski has not produced evidence that would permit a reasonable factfinder to conclude that the initiation of disciplinary proceedings against him was a pretext for retaliation. Contarino's good faith belief that Widomski fabricated two assignments constitutes a legitimate, non-retaliatory reason for bringing a disciplinary action against him. The burden having shifted back to Widomski to provide competent

---

[2] We decline to address Widomski's argument, raised for the first time on appeal, that OCCC regarded him as substantially limited in the major life activity of learning. *See Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005).

evidence of pretext, Widomski fails to raise a genuine factual

dispute as to whether this explanation is false or otherwise

pretextual. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.

2000).

## CONCLUSION

We have considered Widomski's remaining arguments and

conclude that they are without merit. For the foregoing reasons, the

judgment of the District Court is AFFIRMED.