**Mesline LOUIS, individually and on behalf of infants G.A.H., G.A.L. and N.V.S., Plaintiffs,**

v.

**NEW YORK CITY HOUSING AUTHORITY, Defendant.**

**15 Civ. 3122 (NRB)**

United States District Court, S.D. New York.

Signed 01/14/2016

Dana R. DiBlasi (Stricker), Law Office of Dana Stricker, PLLC, Bronx, NY, for Plaintiffs.

Nabiha Rahman, New York City Housing Authority, New York, NY, for Defendant.

## MEMORANDUM AND ORDER

### NAOMI REICE BUCHWALD, UNITED STATES DISTRICT JUDGE

Plaintiff Mesline Louis ("Louis") brings this action on behalf of herself and her children G.A.H., G.A.L., and N.V.S. (collectively, "plaintiffs"), alleging that defendant New York City Housing Authority ("NYCHA") refused to make reasonable accommodations to the disabilities of Louis and N.V.S. in its administration of the Section 8 tenant-based assistance program, in violation of, *inter alia*, Title II of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12131 *et seq.* Plaintiffs also allege that NYCHA's denial of Louis's requests for an emergency transfer when she complained of sexual harassment by her landlord was negligent and a breach of contract and NYCHA's statutory duties.

Originally filed in New York Supreme Court, Bronx County, on or about March 27, 2015, the case was removed to this Court on April 21, 2015. On June 25, 2015, the Court held a conference at which it granted plaintiffs leave to file an amended complaint (the "Amended Complaint" or "Am. Compl.") to cure certain deficiencies in their original complaint. Plaintiffs filed the Amended Complaint on July 13, 2015. On August 10, 2015, NYCHA moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and the motion was fully briefed on October 9, 2015.

For reasons discussed more thoroughly below, we grant NYCHA's motion to dismiss. To briefly summarize, the gravamen of plaintiffs' disability discrimination claims, brought principally as reasonable accommodation claims under Title II of the ADA, is that NYCHA denied plaintiffs an equal opportunity to use and enjoy housing by failing to provide them with an apartment modified to accommodate Louis's and N.S.V.'s disabilities and to meaningfully assist them in obtaining such an apartment. While we are sympathetic to plaintiffs, who have struggled to find suitable housing, we agree with NYCHA that their ADA claims must be dismissed. At the outset, they are barred in part by the relevant statute of limitations and are inadequately plead as to Louis's alleged disability. Further, plaintiffs' allegations do not demonstrate that plaintiffs were denied meaningful access to benefits actually provided by NYCHA through its administration of the Section 8 tenant-based program, which does not supply housing, but instead provides subsidies to low-income families who find their own units to rent from private landlords. Because plaintiffs' demand for modified housing would substantively alter the benefits provided by the program, it does not give rise to a cognizable ADA claim. Moreover, to the extent that some form of assistance in locating accessible housing is required to put Section 8 voucher holders with disabili-

ties on the same footing as nondisabled voucher holders, plaintiffs' Amended Complaint contains no factual allegations suggesting that any obstacles plaintiffs faced in utilizing their vouchers were as a result of any disability.

Finally, plaintiffs' other claims, based both on NYCHA's failure to accommodate and NYCHA's denial of Louis's requests for an emergency transfer, either fail as a matter of law or are more appropriately remanded to the state court at this stage of the litigation.

## BACKGROUND

### I. *Facts* [1]

The Section 8 tenant-based housing assistance program is a federal program providing rent subsidies to low-income tenants in private housing. NYCHA is a public housing agency (or "PHA") that administers the Section 8 tenant-based program in New York City in accordance with the United States Housing Act of 1937 (the "Housing Act"), *as amended*, 42 U.S.C. § 1437 *et seq.*, and regulations promulgated by the United States Department of Housing and Urban Development ("HUD").

In or about 1999, plaintiffs began receiving vouchers through the Section 8 tenant-based program.[2] Louis "suffers from several disabilities including, but not limited to, mental illness, stroke, and seizures."

Am. Compl. ¶ 4. Her son N.V.S. suffers from "several disabilities including, but not limited to, continuing and debilitat[ing] lung disease necessitating monitors, ventilators and other apparatus to sustain his life." *Id.* By 2009, Louis had provided documentary proof of these conditions to NYCHA.

From April 2009 through March 2011, Louis repeatedly notified NYCHA that she was being sexually harassed by her landlord, Michael Hill ("Hill"). Louis visited a NYCHA office in Brooklyn approximately 60 times to request an emergency transfer, and reported the harassment via complaint forms and to her assigned NYCHA representative during those visits. NYCHA failed to act on these complaints and did not grant Louis an emergency transfer, despite her counsel's attempts to obtain one on her behalf. In addition, during a meeting in November 2009, Louis was told by a NYCHA representative that she "could not say anything about the sexual harassment or she would not find a new place to live." Am. Compl. ¶ 13. Ultimately, Louis and her family were "wrongfully evicted" from the apartment owned by Hill pursuant to a holdover proceeding. *Id.* ¶ 12.

Since February 2011, plaintiffs have not had suitable housing. Despite "many written and oral requests" by Louis, NYCHA has "merely provided Plaintiffs with sec-

---

1. The facts, which we assume to be true at this stage of the litigation, are drawn mostly from the Amended Complaint. In addition, to provide necessary context, some information concerning the Section 8 program in this section is drawn from the relevant federal statutes and regulations.

2. While there are other forms of Section 8 housing assistance, all references to the Section 8 program in this opinion are to the tenant-based assistance program. In addition, as discussed below, receiving a voucher does not entitle the recipient to rent subsidies,

as the voucher holder is tasked with finding a housing unit and having a request for assistance approved by NYCHA. Based on declarations submitted with the parties' motion papers, which we do not consider at the motion to dismiss stage, it appears that Louis was admitted to the tenant-based program in "2004." Declaration of Tracy Hooper in Support of Defendant's Motion to Dismiss the Amended Complaint ("Hooper Decl.") ¶ 2; Declaration of Mesline Louis in Opposition to Defendant's Motion to Dismiss the Amended Complaint ("Louis Decl.") ¶ 2.

tion 8 vouchers," and has "failed to assist Plaintiffs in obtaining housing in any meaningful way as well as failed to provide housing modified to assist Plaintiffs with their disabilities, including, but not limited to, the extensive medical apparatus necessary to care for [N.V.S.]" *Id.* ¶ 8. In or about March 2015, NYCHA notified Louis that she was no longer eligible for Section 8 vouchers, and plaintiffs remain homeless.

## II. *The Amended Complaint*

The Amended Complaint sets forth two causes of action, each of which includes a set of factual allegations and appears to assert numerous claims. All of the claims in the "First Cause of Action" section are tied to NYCHA's alleged failure to "make reasonable accommodations in rules, policies, practices or services when such accommodations were necessary to afford Plaintiffs an equal opportunity to use and enjoy a dwelling," including NYCHA's failure to make "reasonable modifications to common use portions of the dwelling," to "assist Plaintiffs in obtaining housing in any meaningful way," and to "provide housing modified to assist Plaintiffs with their disabilities." Am. Compl. ¶¶ 7–8. Based on these alleged failures, plaintiffs contend that NYCHA has discriminated against them on the basis of disability in violation of Title II of the ADA and the New York State Executive Law § 296.18(2), failed to comply with its 1996 "Voluntary Compliance Agreement" with HUD (the "1996 VCA"), acted negligently, breached an unspecified contract, and breached unspecified statutory duties. In the "Second Cause of Action," plaintiffs allege that NYCHA's denial of Louis's requests for an emergency transfer while she was subject to her landlord's sexual harassment was negligent and constituted a breach of contract and unspecified statutory duties. *Id.* ¶ 13.

## DISCUSSION

### I. *Legal Standard*

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiffs. *See, e.g., Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir.2008). However, it is not enough for the complaint to offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a Rule 12(b)(6) motion, plaintiffs must plead sufficient facts "to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Specifically, plaintiffs must allege sufficient facts to show that there is "more than a sheer possibility that a defendant has acted unlawfully," *id.* and if plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed," *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

### II. *Plaintiffs' ADA Claims*

The ADA was enacted to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Plaintiffs' ADA claims are brought pursuant to Title II of the ADA (or "Title II"), which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected

to discrimination by any such entity." *Id.* § 12132. A public entity includes a state or local government body or any instrumentality thereof, and a qualified individual with a disability is, to the extent pertinent here, "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices ... meets the essential eligibility requirements for ... the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(1), (2).

▮ In order to prove a violation of Title II, "a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) the defendant is subject to [the ADA]; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability." *Disabled in Action v. Bd. of Elections in the City of New York,* 752 F.3d 189, 196–97 (2d Cir.2014) (footnote and internal quotation marks omitted).

NYCHA moves to dismiss plaintiffs' ADA claims on the grounds that (1) the claims are barred in part by the relevant statute of limitations; (2) to the extent they rely on Louis's medical conditions, plaintiffs fail to allege that Louis suffered from a qualifying disability; and (3) whether relying on Louis's or N.S.V's conditions, the Amended Complaint does not allege that plaintiffs were excluded from participation in or denied the benefits of NYCHA's Section 8 program because of a disability.

**A. Statute of Limitations**

▮ NYCHA contends that to the extent that plaintiffs' ADA claims are "based on acts that occurred prior to March 27, 2012," three years before this action was filed, they are untimely. Defendant's Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint

("NYCHA Mem.") at 5. "Congress did not establish a statute of limitations for Title II ... claims." *Stamm v. New York City Transit Auth.,* No. 04–CV–2163 (SLT), 2013 WL 244793, at *8 (E.D.N.Y. Jan. 22, 2013). However, when Congress has not established a time limitation for a federal cause of action and the four-year catch-all statute of limitations in 28 U.S.C. § 1658(a) is inapplicable, "we must apply 'the most appropriate or analogous state statute of limitations,'" *Curto v. Edmundson,* 392 F.3d 502, 504 (2d Cir.2004) (quoting *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987)); accordingly, courts in this district regularly apply the three-year statute of limitations for personal injury actions in New York to Title II discrimination claims, *see Best v. Bell,* No. 13 CIV. 0163(JPO), 2014 WL 1316773, at *4 (S.D.N.Y. Mar. 28, 2014); *Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist.,* No. 07–CV–8828 (KMK), 2009 WL 3151200, at *8 (S.D.N.Y. Sept. 29, 2009); *Williams v. New York City Hous. Auth.,* No. 07 CIV 7587(RJS), 2009 WL 804137, at *5 (S.D.N.Y. Mar. 26, 2009), *aff'd,* 408 Fed.Appx. 389 (2d Cir. 2010); *see also* N.Y. C.P.L.R. § 214(5).

▮ Applying that limitations period here, we acknowledge some difficulty in determining when plaintiffs' Title II claims accrued. The Amended Complaint states only that, despite "many written and oral requests" by Louis, plaintiffs have been denied suitable housing from "February 2011 to the present." Am. Compl. ¶¶ 7, 8; *see also* Opposition to Defendant's Motion to Dismiss ("Louis Opp. Mem."), at 1 (N.Y.CHA "failed to reasonabl[y] accommodate Plaintiffs" "commencing in 2011"). Thus, it is not clear when Louis's requests for accommodations were made or denied. However, to the extent that plaintiffs' Title II claims are based on NYCHA's discrete acts of denying Louis's requests prior to March 27, 2012, those claims accrued at the time of denial and must be dismissed.

*See Logan v. Matveevskii,* 57 F.Supp.3d 234, 267 & n. 11 (S.D.N.Y.2014) (Title II claim based on denial of request for accommodation occurring outside of limitations period was untimely).

### B. Disability

■ Under the ADA, an individual is disabled if he or she has an actual disability, defined as (1) "a physical or mental impairment that substantially limits one or more major life activities"; (2) having "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also Widomski v. State Univ. of New York (SUNY) at Orange,* 748 F.3d 471, 474 (2d Cir.2014) (holding that the definition of "disability" in the ADA applies to Title II). Thus, alleging the existence of "[a] medical condition alone, even a serious one," does not suffice, because the condition "must substantially limit a major life activity." *Pagan v. Morrisania Neighborhood Family Health Ctr.,* No. 12 CIV. 9047 (WHP), 2014 WL 464787, at *4 (S.D.N.Y. Jan. 22, 2014). Such "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2)(B).

■ Here, although the Amended Complaint alleges that Louis suffers from mental illness and seizures and has at some point suffered a stroke, it does not allege that these conditions affected either her ability to engage in any life activities, major or minor, or her major bodily functions during the relevant time period.[3] Accordingly, to the extent that plaintiffs' Title II claims are based on Louis's status as a qualified individual with a disability, those claims must be dismissed. *See Graham v. Macy's Inc.,* No. 14 CIV. 3192(PAE), 2015 WL 1413643, at *3 (S.D.N.Y. Mar. 23, 2015) (finding that complaint did "not provide sufficient factual allegations to establish that [plaintiff's] bipolar disorder was disabling" under ADA); *Mabry v. Neighborhood Defender Serv.,* 769 F.Supp.2d 381, 401 (S.D.N.Y.2011) (dismissing ADA claim because complaint alleged no facts "tending to show that [plaintiff's] medical condition limits, let alone substantially limits," any major life activity); *Hallgren v. Bell Atl. Corp.,* No. 99 CIV. 11937(CM), 2000 WL 726496, at *1 (S.D.N.Y. May 30, 2000) (dismissing ADA claim where plaintiff listed various conditions but did not specify how the conditions limited her activities).[4]

---

3. While Louis provided documentation of her conditions to NYCHA, and thus has a record of an impairment, that alone does not qualify her as disabled; the ADA requires " 'a record' of an impairment that substantially limits one or more major life activities." *Colwell v. Suffolk Cty. Police Dep't,* 158 F.3d 635, 645 (2d Cir.1998), *superseded on other grounds by* 42 U.S.C. § 12102(3)(A) (2008).

4. Plaintiffs provide more details concerning Louis's conditions in their opposition brief. *See* Louis Opp. Mem. at 4 (Louis "suffered a

stroke and the sequale [*sic*] of such stroke, including an extended period of partial paralysis," and "suffers from bipolar disorder"). These new allegations do not demonstrate that Louis was substantially limited by the effects of the stroke during the relevant time period, do not explain how Louis's bipolar disorder affected her ability to engage in life activities, and constitute an improper attempt to amend the Amended Complaint through plaintiffs' opposition brief. *See Chamberlain v. City of White Plains,* 986 F.Supp.2d 363, 390 n. 19 (S.D.N.Y.2013) ("It is well estab-

Nevertheless, Louis may bring a Title II claim on behalf of N.V.S. Defendants do not argue that N.V.S., who is alleged to suffer from a lung disease necessitating monitors and ventilators to "sustain his life," Am. Compl. ¶ 4, does not have a disability. *See* 42 U.S.C. § 12102(2)(B) ("major bodily function" includes "respiratory" functions).[5]

## C. Reasonable Accommodations

Plaintiffs allege that NYCHA refused to make reasonable accommodations that were necessary to afford them an equal opportunity to use and enjoy a dwelling. Because plaintiffs have not adequately alleged that Louis qualifies as disabled under the ADA, we consider their reasonable accommodation claims only as they relate to N.V.S.'s disability.

■ The ADA "require[s] that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities." *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 153 (2d Cir.) (alteration in *Mary Jo C.*) (internal quotation marks omitted), *cert. dismissed,* —— U.S. ——, 133 S.Ct. 2823, 186 L.Ed.2d 881 (2013). It is not enough for a program to be offered on equal terms to those with and without disabilities; "the law requires 'affirmative accommodations to ensure that facially neutral rules do not in practice discriminate against individuals with disabilities.'" *Brooklyn Ctr. for Indep. of Disabled v.*

*Bloomberg,* 980 F.Supp.2d 588, 640 (S.D.N.Y.2013) (quoting *Henrietta D. v. Bloomberg,* 331 F.3d 261, 275 (2d Cir. 2003)).

■ Plaintiffs bringing a reasonable accommodation claim are thus tasked with demonstrating that a public entity has failed to "provide[ them] with meaningful access to the benefit that the [public entity] offers." *Alexander v. Choate,* 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). That benefit is defined "by reference to a plaintiff's facial legal entitlements." *Henrietta D.,* 331 F.3d at 277; *see id.* at 273 ("[T]he relevant inquiry asks not whether the benefits available to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled.")

■ However, in determining whether meaningful access has been denied, this Court must "focus on the particular services provided" by the public entity, and avoid construing the benefits of those services at an "incorrect level of generality." *Rodriguez v. City of New York,* 197 F.3d 611, 617, 618 (2d Cir.1999). For example, in *Alexander,* plaintiffs challenged Tennessee's proposed reduction in the annual days of inpatient hospital care covered by its state Medicaid program, contending that a limit of 14 covered days would deny individuals with disabilities meaningful access to Medicaid services in the state and thus violate Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C.

lished that 'a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998))).

5. Even if not disabled, Louis has standing to maintain a claim on her own behalf under the ADA based on her son's disability. *See Blanchard v. Morton School Dist.,* 509 F.3d 934, 938 (9th Cir.2007) (holding that mother,

insofar as she was asserting and enforcing the rights of her son and incurring expenses for his benefit, had standing to bring Title II claim); *A.M. ex rel. J.M. v. NYC Dep't of Educ.,* 840 F.Supp.2d 660, 675 (E.D.N.Y. 2012) (holding that parent had standing to bring independent claims against defendants under ADA based upon the alleged discriminatory conduct of defendants against parent's child), *aff'd,* 513 Fed.Appx. 95 (2d Cir.2013).

§ 794.[6] The Supreme Court concluded that the 14–day limit did not "exclude the handicapped from or deny them the benefits of the 14 days of care the State has chosen to provide." *Alexander*, 469 U.S. at 302, 105 S.Ct. 712. Moreover, it rejected as "unsound" the argument that the fact that individuals with disabilities had a "greater need for prolonged inpatient care means that, to provide meaningful access to Medicaid services, Tennessee must single out the handicapped for *more* than 14 days of coverage." *Id.* at 302–03, 105 S.Ct. 712 (emphasis in original). The Court explained:

> At base, such a suggestion must rest on the notion that the benefit provided through state Medicaid programs is the amorphous objective of "adequate health care." But Medicaid programs do not guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs. Instead, the benefit provided through Medicaid is a particular package of health care services, such as 14 days of inpatient coverage. That package of services has the general aim of assuring that individuals will receive necessary medical care, but the benefit provided remains the individual services offered—not "adequate health care."

*Id.* at 303, 105 S.Ct. 712.

■ Drawing on the Supreme Court's analysis in *Alexander* and its own precedent, the Second Circuit has emphasized the distinction "between (i) making reasonable accommodations to assure access to an existing program and (ii) providing additional or different substantive benefits." *Wright v. Giuliani*, 230 F.3d 543, 548 (2d Cir.2000). A demand for the latter does not give rise to a cognizable claim, as "the disabilities statutes do not require that substantively different services be provided to the disabled, no matter how great their need for the services may be." *Id.*

In moving to dismiss, NYCHA contends that the benefits provided by the Section 8 program do not include "assistance in obtaining housing" or "providing suitable or modified housing." NYCHA Mem. at 8. We agree that plaintiffs' Title II claims appear largely to rest on a misunderstanding of NYCHA's role in administering the Section 8 program. Further, to the extent that some accommodations with respect to a voucher holder's housing search are necessary to provide families with disabled individuals meaningful access to the benefits of the program, plaintiffs do not allege facts to suggest that they were denied those benefits because of N.S.V.'s disability.

■ At the outset, the Amended Complaint's allegations that NYCHA "failed to provide housing modified to assist Plaintiffs with their disabilities" and "refuse[d] to make" "reasonable modifications to common use portions" of an unspecified "dwelling," Am. Compl. ¶¶ 7, 8, do not state a Title II claim. Plaintiffs conflate NYCHA's role as a public housing operator with its role administering the Section 8 program. As already discussed, the Housing Choice Voucher Program, also known as Section 8, is a tenant-based assistance program allowing eligible low-income families to obtain a subsidy for a portion of their rent at a privately owned housing unit. *See* 42 U.S.C. § 1437f(*o*). Under the Housing Act, HUD provides funding to PHAs such as NYCHA for "tenant-based assistance using a payment

---

**6.** For purposes of deciding this motion, the analysis applicable to a Section 504 claim applies to plaintiffs' Title II claims. *See, e.g., Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 n. 6 (2d Cir.2002) ("Apart from the Rehabilitation Act's limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, the reach and requirements of both statutes are precisely the same.").

standard established in accordance with [the statute]." *Id.* § 1437f(o)(1)(A). "Once a payment standard has been determined for an area, a family that is deemed eligible to participate in the Section 8 Program and whose application has been accepted by the PHA receives a voucher, during the term of which the family must find a unit to rent." *Taylor v. The Hous. Auth. of New Haven,* 267 F.R.D. 36, 54–55 (D.Conn.2010) (footnote omitted), *aff'd,* 645 F.3d 152 (2d Cir.2011). After the family finds a unit, if the PHA "approves the unit and tenancy, it then contracts with the owner to provide rent subsidy payments for the tenant." *Bowman v. Waterside Plaza, L.L.C.,* No. 07 CIV. 239(CM)(MHD), 2010 WL 2873051, at *6 (S.D.N.Y. July 21, 2010); *see also* 24 C.F.R. § 982.1(b)(2) ("After approving the tenancy, the PHA enters into a contract to make rental subsidy payments to the owner to subsidize occupancy by the family."). The voucher holder "enters into a lease with the owner under that contract." *Taylor,* 267 F.R.D. at 54.

Accordingly, the benefits of the Section 8 program administered by NYCHA do not include the provision of housing or the modification of common use portions of private dwellings, and plaintiffs nowhere allege otherwise. Two district courts have considered the relevant statutory and regulatory provisions in analyzing disability discrimination claims against PHAs based on their administration of the Section 8 tenant-based program and reached the same conclusion. *See Taylor,* 267 F.R.D. at 58 (finding that the program's benefit "consists of the voucher, housing assistance payments, and, upon request, lease negotiation; and that the program's benefit does not include search assistance, housing, or a guarantee of suitable housing"); *Liberty Resources, Inc. v. Philadelphia Housing Authority,* 528 F.Supp.2d 553, 568–69 (E.D.Pa.2007) (concluding that the program did not "offer participants a place to live as a benefit," and "funding modifications to privately-owned units is not a service offered by [Section 8] Programs").

While they do not respond to the argument that NYCHA's services in the Section 8 context do not include the provision of suitable housing, plaintiffs generally assert that they have satisfied the elements of a Title II claim, citing to *Blatch ex rel. Clay v. Hernandez,* 360 F.Supp.2d 595 (S.D.N.Y.2005). However, the Title II claims in that case were brought against NYCHA in its role as a public housing provider, not in its role administering the Section 8 tenant-based program. *See Blatch,* 360 F.Supp.2d at 601 ("[T]he class is comprised of: Present, past and future tenants and/or occupants with mental disabilities who reside, resided or seek to reside in housing owned and operated by NYCHA ...." (internal quotation marks omitted)). NYCHA is not required to provide suitable housing and modified common spaces to plaintiffs, who are not residents of NYCHA-owned housing. *See Wright,* 230 F.3d at 548 ("[T]he disabilities statutes do not require that substantively different services be provided to the disabled, no matter how great their need for the services may be.").

Plaintiffs also do not state a plausible Title II claim based on their allegations that NYCHA failed to assist them in obtaining housing in a meaningful way and merely provided them with Section 8 vouchers. While they assert without elaboration that NYCHA was required to provide them with meaningful assistance, plaintiffs do not allege that NYCHA provides any form of assistance with respect to securing housing to any voucher holders. *Cf. Henrietta D.,* 331 F.3d at 276–77 ("[T]he demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to

sustain a claim for a reasonable accommodation.").

Nonetheless, this Court recognizes that the line between requests for accommodations necessary to assure meaningful access to an existing program and requests for benefits substantively different from those offered by the program may often be difficult to discern. On one hand, "[n]either the [Housing Act] nor implementing HUD regulations ... state that as part of its administration of a Section 8 housing voucher program, a PHA must assist an eligible family in finding a unit; in fact they strongly suggest the contrary." *Tay-*

7. As explained in detail by the *Taylor* and *Liberty Resources* courts, the Housing Act and HUD regulations generally emphasize the role of the eligible family in selecting its own housing. *See, e.g.,* 42 U.S.C. § 1437f(f) (7) (under the Housing Act, "the term 'tenant-based assistance' means rental assistance" under HUD's Housing Choice Voucher Program "that is not project-based assistance and that *provides for the eligible family to select suitable housing and to move to other suitable housing*" (emphasis added)); 24 C.F.R. § 982.1(b)(1) ("With tenant-based assistance, *the assisted unit is selected by the family.*" (emphasis added)); *id.* § 982.1(b)(2) ("To receive tenant-based assistance, *the family selects a suitable unit.*" (emphasis added)); *id.* § 982.1(a)(2) ("Families select and rent units that meet program housing quality standards."); *id.* § 982.302(a), (b), (c) (after a PHA issues a voucher to an eligible family, "[t]he family may search for a unit," and "[i]f the family finds a unit, and the owner is willing to lease the unit under the program, the family may request PHA approval of the tenancy" by "submit[ting] to the PHA a request for approval of the tenancy and a copy of the lease").

8. 24 C.F.R. § 8.28(a) was promulgated under Section 504. It provides:

(a) In carrying out the requirements of this subpart, a recipient administering a Section 8 Existing Housing Certificate program or a housing voucher program shall:

(1) In providing notice of the availability and nature of housing assistance for low-income families under program require-

*lor,* 267 F.R.D. at 57; *see Liberty Resources,* 528 F.Supp.2d at 568 (stating that PHA is "not responsible for locating participant housing" and "the onus is on program participants to find their own rental units.").[7] At the same time, it is conceivable that families with handicapped members may require certain forms of assistance in locating accessible housing to have an equal opportunity to utilize their vouchers. Notably, HUD regulations such as 24 C.F.R. § 8.28(a)[8] and 24 C.F.R. § 100.204[9] require PHAs to make accommodations to individuals with disabilities in carrying out the Section 8 program. In

ments, adopt suitable means to assure that the notice reaches eligible individuals with handicaps;

(2) In its activities to encourage participation by owners, include encouragement of participation by owners having accessible units;

(3) When issuing a Housing Certificate or Housing Voucher to a family which includes an individual with handicaps include a current listing of available accessible units known to the PHA and, if necessary, otherwise assist the family in locating an available accessible dwelling unit;

(4) Take into account the special problem of ability to locate an accessible unit when considering requests by eligible individuals with handicaps for extensions of Housing Certificates or Housing Vouchers; and

(5) If necessary as a reasonable accommodation for a person with disabilities, approve a family request for an exception rent under § 982.504(b)(2) for a regular tenancy under the Section 8 certificate program so that the program is readily accessible to and usable by persons with disabilities.

9. 24 C.F.R. § 100.204 was promulgated under the Fair Housing Act, 42 U.S.C. § 3601 et seq. It provides in relevant part:

(a) It shall be unlawful for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be neces-

fact, § 8.28(a) mandates certain specific accommodations, including providing "a current listing of available accessible units known to the PHA" when issuing a voucher to a family with an individual with a disability, and "if necessary, otherwise assist[ing] the family in locating an available accessible dwelling unit." 24 C.F.R. § 8.28(a)(3). While, as discussed below, the Second Circuit has held that these regulations do not create privately enforceable rights, they may "provid[e] interpretive meaning as to whether particular kinds of accommodations by a PHA ... are reasonable." *Taylor*, 267 F.R.D. at 47.

However, even assuming that some assistance with locating accessible housing may in certain circumstances be necessary to allow individuals with disabilities to overcome obstacles to meaningful participation in the Section 8 program, the Amended Complaint contains no factual allegations as to any obstacles Louis faced in locating suitable housing for her family as a result of her son's—or for that matter, her own—medical conditions. Further, plaintiffs nowhere suggest accommodations that may have permitted them an equal opportunity to search for housing despite those conditions. Instead, plaintiffs simply assert that they have not had suitable housing because of NYCHA's failure to provide meaningful assistance in

obtaining such housing. Without any factual allegations to support the conclusion that, by reason of a disability, the provision of vouchers alone was insufficient to provide plaintiffs meaningful access to the Section 8 program, the Court can only speculate as to their entitlement to relief.[10] *Cf. Henrietta D.*, 331 F.3d at 291 (a plaintiff with disabilities "suing under the ADA ... may show that he or she has been excluded from or denied the benefits of a public entity's services or programs 'by reason of such disability' even if there are other contributory causes for the exclusion or denial, as long as ... the disability was a substantial cause of the exclusion or denial"); *Huynh v. Sanchez*, No. 5:14-CV-02367 (LHK), 2014 WL 4364846, at *2–*3, *10 (N.D.Cal. Sept. 2, 2014) (plaintiff's reasonable accommodation claim survived motion to dismiss where plaintiff alleged that a Section 8 voucher providing for an additional bedroom was necessary to accommodate his disability, that without the extra bedroom his family would either need to give up the right to sleep with two or fewer people in a bedroom or lose access to a living room, and that if he was not disabled the family would not be forced into that choice). Accordingly, plaintiffs' claims based on NYCHA's alleged failure to provide meaningful assistance are also dismissed.[11]

---

sary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas.

10. In contending that Louis's inability to find housing had nothing to do with her disability, NYCHA cites a statement made by Louis's counsel at a conference before the Court indicating that Louis believed that she was unable to locate an apartment because she had been blacklisted by landlords after her eviction pursuant to a holdover proceeding. *See* Declaration of Nabiha Rahman in Support of Defendant's Motion to Dismiss the Amended Complaint (the "Rahman Declaration" or

"Rahman Decl.") ¶ 13; NYCHA Mem. at 7. We do not consider that statement in resolving this motion.

11. While not considered in the Court's decision, NYCHA attached evidence to its motion indicating that between June 2011 and January 2015, it approved Louis's emergency transfer requests and voucher extension requests, *see* Hooper Decl., Ex. A; according to NYCHA, these requests were "based on her eviction," and "Louis did not verbally or through writing request assistance in obtaining housing or the provision of suitable or modified housing as a reasonable accommodation to a disability," Hooper Decl. ¶ 3.

### III. *Plaintiffs' Remaining Claims*

In addition to the ADA claims, plaintiffs' "First Cause of Action" alleges that NYCHA violated N.Y. Exec. Law § 296.18(2) and breached unspecified statutory duties and its obligations under the 1996 VCA with HUD. Plaintiffs also refer to NYCHA's "negligence" and "breach of contract." Am. Compl. ¶ 7. In their "Second Cause of Action," based on NYCHA's denials of Louis's requests for an emergency transfer while Louis was allegedly sexually harassed by her landlord, plaintiffs assert that

> Defendant's failure to issue an emergency transfer during the time Ms. Louis was residing in the apartment owned by Mr. Hill was negligent and a breach of contract and a breach of their statutory duties.

*Id.* ¶ 13.

NYCHA moves to dismiss these claims, arguing that: no private right of action exists under the Housing Act and its implementing regulations; the 1996 VCA cannot be privately enforced and is irrelevant to plaintiffs' claims; N.Y. Exec. Law § 296.18(2) does not apply to NYCHA in its administration of the Section 8 program; any negligence claims are time-barred and inadequately plead; and any breach-of-contract claims fail because there is no contract between the parties.

In their opposition brief, plaintiffs do not respond to these arguments or include any of their own arguments in support of these claims. Accordingly, we may properly infer that plaintiffs, represented by counsel, have abandoned them. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 197–98 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08–CV–442 (TPG), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

 Even if not abandoned, these claims would not survive NYCHA's motion. To the extent that the reference to a breach of statutory duties in the "First Cause of Action" is not aimed at the alleged violations of the ADA and N.Y. Exec. Law § 296.18(2) cited elsewhere, that conclusory assertion—made without identifying any statutory provision NYCHA breached or explaining how NYCHA breached it—is insufficient. *See Window Headquarters, Inc. v. MAI Basic Four, Inc.*, No. 91 CIV. 1816(MBM), 1993 WL 312899, at *5 (S.D.N.Y. Aug. 12, 1993)

---

In her own declaration, Louis states that she regularly went to NYCHA's office to inform NYCHA of her and N.V.S.'s conditions, and that although NYCHA "approved transfer requests and extension requests, [she] continually told them that [she] needed additional assistance." Louis Decl. ¶ 3. She also notes that she has been on the waiting list for NYCHA-owned housing "for years." *Id.* We "properly consider[] only the allegations on the face of Plaintiff[s'] complaint—and not those asserted in [their] opposition briefing and attached declarations." *Rivero v. INTL FCStone Inc.*, No. 14 CIV. 3879 (PAC), 2015

WL 6128707, at *3 (S.D.N.Y. Oct. 19, 2015); *see also Leason Ellis LLP v. Patent & Trademark Agency LLC*, 13 CV 2880 (VB), 2014 WL 3887194, at *3 (S.D.N.Y. July 2, 2014) ("Courts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss" (internal quotation marks omitted)). In any event, the content of Louis's declaration does not alter the above analysis; if anything, it suggests that Louis received additional time to secure housing, even if not as an accommodation to a disability.

("not enough" to state a claim where "plaintiff has not cited any source for the 'statutory duty' allegedly owed by [defendants]" and "merely mentions the term 'statutory duty' several times in the complaint"). Moreover, as NYCHA suggests, assuming that the reference to NYCHA's breach of statutory duties is to 42 U.S.C. § 1437f (the Section 8 portion of the Housing Act) or to HUD regulations, plaintiffs have not identified a provision under either affording them a privately enforceable right to reasonable accommodations distinct from their rights under Title II of the ADA. Because they do not state which statutory or regulatory provisions underlie their allegations of breach, our inquiry into whether plaintiffs possess a privately enforceable right is necessarily speculative. Our best reading of 42 U.S.C. § 1437f and the HUD regulations is that plaintiffs' disability claims may implicate 24 C.F.R. §§ 8.28(a) and 100.204, the aforementioned HUD regulations promulgated under Section 504 and the Fair Housing Act, respectively. However, the Second Circuit has held that these regulations do not create privately enforceable rights. *See Taylor ex rel. Wazyluk v. Hous. Auth. of City of New Haven*, 645 F.3d 152, 153 (2d Cir. 2011); *see also Three Rivers Ctr. for Indep. Living, Inc. v. Hous. Auth. of Pittsburgh*, 382 F.3d 412, 418–32 (3d Cir.2004) (reaching analogous conclusions with respect to HUD regulations addressing accessibility in public housing projects and facilities at 24 C.F.R. §§ 8.22, .23, and .26). Plaintiffs' reference to "statutory duties" thus does not appear to state a separate disability discrimination claim.[12]

Plaintiffs' reliance on the 1996 VCA between NYCHA and HUD is also unavailing. The 1996 VCA states that it "does not increase or diminish the ability of any person ... to exercise their rights under ... the [ADA]" and "does not create any private right of action for any person or class of persons not a party to this agreement." 1996 VCA § III.B.[13] More generally, the agreement, which applies to "all

---

12. Similarly, the Amended Complaint's cursory reference to a breach of statutory duties with respect to NYCHA's failure to grant an emergency transfer when Louis was being sexually harassed by her landlord, without any elaboration in plaintiffs' opposition brief, is also insufficient. The Amended Complaint and the parties' briefs contain no reference to a particular statute governing NYCHA's decision whether or not to grant a request for an emergency transfer. On its own consideration of the Housing Act and HUD regulations, the Court finds most relevant 24 C.F.R. § 982.354, formerly 24 C.F.R. § 982.314, which describes "when a participant family may move to a new unit with continued tenant-based assistance." One circumstance in which a family may move, included as part of amendments conforming HUD regulations to the Violence Against Women and Department of Justice Reauthorization Act of 2005 ("VAWA 2005"), is if "[t]he family or a member of the family is or has been the victim of domestic violence, dating violence, or stalking, as provided in 24 CFR part 5, subpart L, and the move is needed to protect the health or safety of the family or family member." 24 C.F.R. § 982.354(b)(4); *see* HUD Programs: Violence Against Women Act Conforming Amendments, 75 Fed.Reg. 66,246 (Oct. 27, 2010). However, "a right of action can extend no further than the personal right conferred by the plain language of the statute." *Taylor ex rel. Wazyluk*, 645 F.3d at 153; *see also Alexander v. Sandoval*, 532 U.S. 275, 291, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (regulation may be privately enforced only if it "invoke[s] a private right of action that Congress through statutory text created"). Even assuming that this regulation was implicated here, which is far from clear, we do not see language in 42 U.S.C. § 1437f, as amended by VAWA 2005, suggesting that plaintiffs have a private right to enforce it against NYCHA.

13. The 1996 VCA is included as Exhibit D to the Rahman Declaration, and because the Amended Complaint references it and relies on its terms and effect, we may consider it at this motion to dismiss stage. *See generally Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir.2002).

federally funded developments and related facilities that *NYCHA, its agents, successors, and assigns or beneficiaries own, control, operate or sponsor,*" *id.* § III.A (emphasis added), relates to NYCHA's responsibilities to persons with disabilities with respect to its operation of its housing developments and "nonhousing" facilities, and not its administration of the Section 8 program. *See id.* §§ I, I.A, I.B, II.E, II.N.

 In their opposition brief, plaintiffs raise new reasonable accommodation claims based on Section 504 and the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3604. Again, "plaintiffs cannot use their opposition to the motion to dismiss to raise new claims or arguments." *Kiryas Joel Alliance v. Vill. of Kiryas Joel*, No. 11–CV–3982 (JSR), 2011 WL 5995075, at *10 n. 9 (S.D.N.Y. Nov. 29, 2011). In any event, the FHAA and Section 504 claims fail for the same reason as the Title II claims: plaintiffs have not sufficiently plead that they were denied meaningful access to the Section 8 program because of a disability. *See Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir.2015) ("As the standards for actions under these [reasonable accommodation] provisions of the ADA and the Rehabilitation Act are generally equivalent, we analyze such claims together."); *Taylor*, 267 F.R.D. at

75 ("[Section 504] and the FHAA's reasonable accommodation mandate require that programs be administered in a non-discriminatory manner, but do not support challenges to 'the substance of the services provided to' the disabled." (quoting *Doe v. Pfrommer*, 148 F.3d 73, 84 (2d Cir.1998))).

 The opposition brief also raises new § 1983 claims alleging violations of plaintiffs' procedural due process rights under the Fourteenth Amendment. We do not consider these new claims, but even if we did, we would conclude that they lack any factual support in the Amended Complaint. To assert a claim pursuant to § 1983 based on a violation of procedural due process, plaintiffs must plead that (1) they possess a liberty or property interest protected by the Constitution or a federal statute, and (2) they were deprived of that interest without due process. *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir.2002). Plaintiffs do not attempt to meet those requirements, and instead simply refashion their discrimination claims by asserting that NYCHA "remained 'deliberately indifferent' to Plaintiffs' disabilities by doing no more than issuing vouchers in a situation that clearly required alternate and additional action." Louis Opp. Mem. at 6. The brief does not identify a particular liberty or property interest implicated by NYCHA's failure to take such alternate and additional action, nor does it identify any process plaintiffs were due but not provided.[14]

---

14. The brief does state, without explanation, that NYCHA violated 42 U.S.C. § 1437d(k), *see* Louis Opp. Mem. at 6, which provides in relevant part:

The Secretary [of HUD] shall by regulation require each [PHA] receiving assistance under this chapter to establish and implement an administrative grievance procedure under which tenants will—

(1) be advised of the specific grounds of any proposed adverse public housing agency action;

(2) have an opportunity for a hearing before an impartial party upon timely request . . .

(3) have an opportunity to examine any documents or records or regulations related to the proposed action;

(4) be entitled to be represented by another person of their choice at any hearing;

(5) be entitled to ask questions of witnesses and have others make statements on their behalf; and

(6) be entitled to receive a written decision by the public housing agency on the proposed action.

42 U.S.C. § 1437d(k). Plaintiffs do not contend that NYCHA was required to provide them with an administrative grievance pro-

Finally, we decline to exercise supplemental jurisdiction over plaintiffs' remaining state-law negligence, breach-of-contract, and discrimination claims. A district court has discretion over whether to exercise jurisdiction over state-law claims "that are so related to claims in the action" over which it has original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity—the *Cohill* factors. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir.2003) (internal quotation marks omitted). The initial complaint in this case was filed in March of this year, and the case was removed from state court in April. There has been no significant activity aside from the Amended Complaint and the briefing on the motion to dismiss, and several state-law claims remain. Accordingly, we believe that the *Cohill* factors favor our declining to exercise supplemental jurisdiction over plaintiffs' remaining state-law claims.

## CONCLUSION

For the foregoing reasons, the Court GRANTS NYCHA's motion to dismiss. Plaintiffs' claims based on N.Y. Exec. Law § 296.18(2), negligence, and breach of contract are REMANDED to New York Supreme Court, Bronx County. The Clerk is respectfully directed to terminate the

ceeding or that it violated any of the above

pending motion (Doc. No. 13) and close this case.