21-622-cv
*Buon v. Spindler, et al.*

# United States Court of Appeals
## for the Second Circuit

_____

August Term 2021

(Argued: March 10, 2022     Decided: April 12, 2023)

No. 21-622-cv

_____

DR. LISA BUON,

*Plaintiff-Appellant*,

— v. —

LISAMARIE SPINDLER, ROBERTO PADILLA,
THE NEWBURGH ENLARGED CITY SCHOOL DISTRICT,

*Defendants-Appellees*.[*]

_____

Before:     CHIN, SULLIVAN, and BIANCO, *Circuit Judges*.

Plaintiff-appellant Dr. Lisa Buon appeals from the judgment of the United States District Court for the Southern District of New York (Román, *J.*), dismissing all claims against defendants-appellees the Newburgh Enlarged City School District, Superintendent Roberto Padilla, and Assistant Superintendent Lisamarie Spindler.  Plaintiff, an African American woman of West Indian descent who

_____

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

served as principal of South Middle School, asserts claims of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment, as made actionable by 42 U.S.C. § 1983. As a threshold matter, we conclude that although the School District has been properly served with the summons and complaint, Buon has failed to demonstrate proper service as to Spindler and Padilla. Moreover, we agree with the district court that Buon failed to exhaust the portion of her Title VII claim related to the alleged adverse employment actions in May 2019. As to the merits, we conclude that the district court erred in holding that the First Amended Complaint failed to state a plausible claim under Title VII or the Equal Protection Clause.

Accordingly, we **AFFIRM** the district court's dismissal of the Title VII claim to the extent the claim is based on alleged adverse employment actions in May 2019, and **VACATE** the district court's judgment to the extent it dismissed the Section 1983 claim and the remainder of the Title VII claim. The case is **REMANDED** to the district court for further proceedings consistent with this opinion, including a determination as to whether Buon should be provided with an extension of time to effectuate proper service as to Spindler and Padilla.

> JONATHAN R. GOLDMAN (Michael H. Sussman, *on the briefs*), Sussman & Associates, Goshen, NY, *for Plaintiff-Appellant*.
>
> DEANNA L. COLLINS (Caroline B. Lineen, *on the brief*) Silverman & Associates, White Plains, NY, *for Defendants-Appellees*.

JOSEPH F. BIANCO, *Circuit Judge*:

Plaintiff-appellant Dr. Lisa Buon ("Buon") appeals from the judgment of the

United States District Court for the Southern District of New York (Román, *J.*),

2

dismissing all claims against defendants-appellees the Newburgh Enlarged City School District ("School District"), Superintendent Roberto Padilla ("Padilla"), and Assistant Superintendent Lisamarie Spindler ("Spindler") (collectively, the "defendants"). Plaintiff, an African American woman of West Indian descent who served as principal of South Middle School ("SMS"), asserts claims of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment, as made actionable by 42 U.S.C. § 1983.

As a threshold matter, we conclude that although the School District has been properly served with the summons and complaint, Buon has failed to demonstrate proper service as to Spindler and Padilla. Moreover, we agree with the district court that Buon failed to exhaust the portion of her Title VII claim related to the alleged adverse employment actions in May 2019. As to the merits, we conclude that the district court erred in holding that the First Amended Complaint ("FAC" or "Amended Complaint") failed to state a plausible claim under Title VII or the Equal Protection Clause.

Accordingly, we **AFFIRM** the district court's dismissal of the Title VII claim to the extent the claim is based on alleged adverse employment actions in May

3

2019, and **VACATE** the district court's judgment to the extent it dismissed the Section 1983 claim and the remainder of the Title VII claim. The case is **REMANDED** to the district court for further proceedings consistent with this opinion, including a determination as to whether Buon should be provided with an extension of time to effectuate proper service as to Spindler and Padilla.

## BACKGROUND

### I.  Factual Background[1]

Buon is an African American woman of West Indian descent. The School District is a municipal corporation located in Orange County, New York. At all relevant times, Padilla served as the School District's Superintendent of Schools. During the 2018–19 school year, Spindler served as the Assistant Superintendent for Secondary Curriculum and Education. Padilla and Spindler are neither African American nor of West Indian descent.

For the twelve years preceding the 2017–18 school year, Buon served as an elementary school principal at Horizons-on-Hudson, a magnet school operated by the School District. In the spring of 2017, Padilla approached Buon and asked

---

[1] The factual summary below is derived from the allegations in the FAC, which we must accept as true in reviewing a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4

whether she would be willing to assume leadership of SMS, a secondary school within the School District. Buon expressed concern that this new role would cause her to lose the tenure she had as an elementary school principal. To alleviate her concerns, Padilla agreed to allow Buon to retain her tenure after she became principal of SMS and during her four-year probationary period as a secondary school principal. During the 2017–18 school year, Buon successfully served as principal of SMS and administrator of the School District's RISE program (which is undefined in the FAC) and was assigned to continue working at the summer school.

According to the FAC, the conditions of Buon's employment as principal changed during the 2018–19 school year, when defendants allegedly began treating her worse than secondary-school principals and administrators of other races and national origins who were also employed within the School District. Specifically, the FAC alleges, *inter alia*, that:

- Spindler and Padilla "consistently criticized [Buon] and invited her to numerous disciplinary meetings and meted out unjustified chastisement"—harsh treatment that, Buon alleges, was not similarly

5

imposed on secondary school principals and administrators of other races or national origins in the School District. Joint App'x at 13.

- Padilla supported a request from a White principal to bar a disruptive parent from his schools; however, Buon's similar request was ignored, and a violent parent was permitted ongoing access to SMS.

- In late October 2018, Spindler instructed Buon to advise SMS students that they were not allowed to wear Halloween costumes and that she had to call students to convey this message. However, Spindler did not require any other middle school principals to make similar calls, even though students at three other schools in the School District, none of which had an African American or West Indian principal, wore Halloween costumes.

- Although school principals typically accompany administrators when they conduct school "walk throughs," Spindler conducted a "walk[ ]th[r]ough" of SMS without Buon and gave her a list of nineteen items that "needed correction," many of which had "innocent explanations." *Id.* at 14. Spindler did not treat any other

6

secondary-school principals—who were not African American or West Indian—in this manner.

- In November 2018, SMS's school leadership team recommended "Math in the City" for its math curriculum. However, Spindler chastised Buon for this choice and inaccurately claimed that "Math in the City" could not be implemented at a middle school outside of New York City. Spindler instructed SMS to use another math program, despite allowing a White principal at another school in the School District to choose a program other than the program Spindler favored.

- In November 2018, Buon learned from Spindler that Spindler was required to meet monthly with principals as part of the Academic Cabinet. However, Spindler conducted no such meetings with Buon, although Spindler did hold Academic Cabinet meetings with principals who were not African American or West Indian.

On November 30, 2018, a senior administrator provided Buon with a letter of evaluation that, according to the FAC, contained false accusations about her performance. Buon responded to the letter and explained why the claims "were

7

inaccurate and manifested disparate treatment." *Id.* at 16. On December 2, 2018, Buon filed an internal complaint alleging Spindler's conduct had created a hostile work environment.

The FAC alleges that the disparate treatment continued into 2019, including the following:

- In January 2019, Buon learned that she and Spindler were supposed to make a presentation at an Academic Cabinet meeting. However, Spindler provided Buon with late notice of this obligation, rendering its implementation impossible. Padilla then asked Spindler to share the protocol for collaboration in front of the Academic Cabinet team, thereby humiliating Buon and making it appear as though Buon was unprepared.

- On January 9, 2019, Buon was required to attend a disciplinary meeting with the School District's Assistant Superintendent of Human Resources to discuss allegedly false claims that she abused sick leave. Buon was required to provide written proof of a wedding to use vacation days to attend it, while a White principal was

8

permitted to use vacation days to attend a family wedding with only a verbal request.

- In February 2019, Spindler cancelled the Course Recovery Program, which served academically needy students, and advised one principal of that cancellation, who is not African American or West Indian, but did not tell Buon and then blamed her for not knowing about the cancellation.

- In February 2019, Padilla accused Buon of coming into school late, when she arrived between 6:58 am and 7:10 am, even though Buon's union contract had no specific start-time and numerous administrators of other races or national origins came to school later than Buon and suffered no adverse consequences.

- Padilla required Buon to respond to email invitations for meetings within 24 hours of receipt and to provide an explanation when she was unable to attend, even if the meeting was not mandatory. However, other principals who were not African American or West Indian did not have to follow that procedure. On February 15, 2019, Spindler "berated" Buon for not attending a meeting, even though

Buon responded that she could not attend the meeting within twenty-four hours of receiving the invite. *Id.* at 19. Two other administrators, neither of whom was African-American or West Indian, failed to respond to or attend the meeting—without any consequence by Spindler.

The FAC further alleges that, in 2019, Buon was denied two positions within the School District, and then removed from the SMS principal position, based upon her race and national origin. First, in January 2019, the staff member in charge of the RISE program had to leave the district, creating a vacancy. Buon, who had previously held the position and was fully qualified for it, applied. The salary for this position was set at the contractual rate of $81 an hour for two and half to three hours, five days a week, or approximately $30,000 for that year. However, at Padilla's recommendation, the position was given to a less-qualified, newly hired administrator, who did not hold a school-based job and was neither African American nor West Indian.

Second, in May 2019, Buon applied to be one of the five administrators of the School District's summer-school program, a role she had successfully performed for at least five years. According to the FAC, defendants ultimately

10

selected individuals to fill the positions who were less qualified and significantly less experienced than Buon. Of the five individuals chosen, four were Caucasian and one was Latino. Another qualified candidate who did not obtain one of the positions was Black and of West Indian descent.

Finally, on May 22, 2019, Padilla informed Buon that he was recommending her termination as SMS principal, despite Buon having been "rated as an effective administrator" for the 2018–19 year. *Id.* at 21. According to the FAC, "[a]t public meetings, despite strong community support, the defendants maintained their claim that [Buon] had not properly discharged her duties as principal of SMS, necessitating her removal." *Id.* at 22. The FAC alleges that all of the reasons for Buon's termination from that position were baseless, pretextual, and "uttered as part of the discriminatory devaluation of [Buon's] professional contribution and as a cover for the discriminatory treatment accorded [to Buon]." *Id.* After Buon's internal grievance was denied, she was transferred back to her prior position as principal at the Newburgh elementary school, which cost her at least $8,000 in salary.

## II. Procedural History

On April 4, 2019, Buon filed a Charge of Discrimination with the U.S. Equal

11

Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights, alleging ongoing acts of discrimination on the basis of race, color, national origin, and retaliation. The EEOC charge listed, among other purported discriminatory incidents, the School District's refusal to hire Buon for the after-school RISE Program. On April 23, 2019, the EEOC denied Buon's claims and mailed her a right-to-sue letter.

On July 19, 2019, Buon, acting *pro se*, filed an initial complaint against defendants-appellees and other defendants in the United States District Court for the Southern District of New York. The district court then ordered the Clerk of Court to issue a summons and directed Buon to serve the summons and complaint on each defendant within ninety days of the issuance of the summons. The order stated that, "[i]f within those 90 days, [Buon] has not either served [d]efendants or requested an extension of time to do so, the Court may dismiss the claims against [d]efendants under Rules 4 and 41 of the Federal Rules of Civil Procedure for failure to prosecute." *Id.* at 4.

In October 2019, defendants filed pre-motion conference letters seeking the district court's leave to move to dismiss the complaint on the grounds, *inter alia*, of improper service and failure to obtain personal jurisdiction. On February 22, 2020,

counsel entered an appearance on behalf of Buon, *see* DC Dkt. No. 20, and sought leave to "file and serve" an amended complaint to cure "deficiencies in the pro se complaint," DC Dkt. No. 21.[2] The letter also stated that counsel for the defendants "ha[d] consented to [Buon] filing an Amended Complaint against her clients." *Id.* The district court granted Buon's motion for an extension of time to file and serve an amended complaint on or before March 15, 2020, and a further extension until April 3, 2020.[3] On April 1, 2020, Buon filed the FAC, alleging that defendants discriminated against her based upon her race and national origin in violation of Title VII and the Equal Protection Clause.

On March 18, 2021, the district court issued an opinion and order dismissing the FAC pursuant to Federal Rules of Civil Procedure 12(b)(2), (4), (5), and (6). As a threshold matter, the district court dismissed the case against defendants Spindler and Padilla for lack of personal jurisdiction. In particular, the district court determined that neither Spindler nor Padilla had been properly served because (1) "[t]he affidavit of service indicates that Padilla accepted service on

---

[2] Citations to the district court docket are abbreviated as "DC Dkt. No. __."

[3] Although the district court's order only explicitly referenced an extension for the request to file an amended complaint, the district court underlined the request for leave "to *file and serve* [the] Amended Complaint" and, therefore, granted the entire request. DC Dkt. No. 22 (emphasis added). Defendants do not argue otherwise on appeal.

13

behalf of Newburgh but does not indicate that Padilla accepted service on behalf of [himself or] Spindler," (2) "even if Padilla did receive a copy of the [initial complaint], [d]efendants maintain, and [Buon] does not dispute, that Padilla did not receive a copy [of the initial complaint] for each defendant," and (3) "while Padilla was authorized to accept service on behalf of [the School District], he was not authorized to accept service on behalf of Spindler."  Joint App'x at 51.  The district court further explained that, although it was unclear whether the School District was properly served, "the Court need not rule on the matter because the FAC [was] otherwise properly dismissed on the merits" under Rule 12(b)(6). *Id.*

With respect to the Title VII discrimination claim, the district court first concluded that Buon could not base that claim on either of the two adverse actions that allegedly occurred in May 2019—that is, her failure to secure a summer position and her termination from the position of SMS principal—because she did not amend her EEOC charge to include those events and, thus, failed to properly exhaust.  With respect to the remaining allegations that were properly exhausted, the district court held that neither the alleged "slight alterations of her job responsibilities," nor the denial of her "application to serve as administrator of the RISE program," constituted an adverse employment action under Title VII.  *Id.* at

14

54–56. The district court further held that "[e]ven if [d]efendants' actions qualified as adverse employment actions, [Buon's] employment discrimination claims would still fail because she has not alleged that the foregoing actions occurred in circumstances supporting an inference of discrimination." *Id.* at 56.

The district court also dismissed the Section 1983 claim on the merits, concluding that "[Buon's] allegations of disparate treatment and her personal opinion that such treatment was motivated by discriminatory intent are not enough to prevail on a Section 1983 claim for a violation of the Equal Protection Clause." *Id.* at 59.

Finally, because the district court found that the FAC should be properly dismissed on the merits notwithstanding any service issues, it dismissed the FAC with prejudice.

This appeal followed.

## DISCUSSION

### I. Dismissal for Improper Service

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (quoting *Omni Cap.*

*Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). Therefore, to survive a motion to dismiss based on lack of personal jurisdiction and insufficient service of process, the plaintiff must demonstrate that she adequately served the defendants. *See Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010).

The requirements for service of process are governed by Rule 4, which includes a requirement that "[a] summons must be served with a copy of the complaint." Fed. R. Civ. P. 4(c)(1). Applying this rule, courts have found service of process to be defective where a plaintiff serves a complaint without a summons or a summons without a complaint. *See* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1093 (4th ed. Apr. 2022 Update) (hereinafter Wright & Miller). That said, a defendant can waive his or her right to contest whether service of process was proper under Rule 4. *See* Wright & Miller § 1062; *see also Datskow v. Teledyne, Inc.*, 899 F.2d 1298, 1303 (2d Cir. 1990) ("A delay in challenging personal jurisdiction [due to improper service of process] by motion to dismiss has resulted in waiver, even where, as here, the defense was asserted in a timely answer."). Similarly, in *Trustees of Central Laborers' Welfare Fund v. Lowery*, the Seventh Circuit held that even if insufficiency of process is raised in a motion or response, it can subsequently be waived by "submission through conduct" that

leads the plaintiff to believe that service was adequate and no such defense will be continued. 924 F.2d 731, 732–33 (7th Cir. 1991) (internal quotation marks omitted); *see also Gore v. RBA Grp., Inc.*, No. 03-cv-9442 (RJS), 2009 WL 884565, at *4–5 (S.D.N.Y. Mar. 27, 2009) (collecting cases applying submission-through-conduct doctrine).

We review a dismissal based on insufficient service of process for abuse of discretion. *See Dickerson*, 604 F.3d at 740 (internal citation omitted). A district court abuses its discretion when "(1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision . . . cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001) (internal footnote omitted).

Here, the district court dismissed the claims against defendants Spindler and Padilla for lack of personal jurisdiction because it found, "[b]ased on the documentary evidence presented . . . that neither . . . were properly served." Joint App'x at 51. Although defendants also argued that the School District was improperly served, the district court did not reach that issue. As set forth below, we conclude that the School District was properly served, but that Buon failed to demonstrate proper service as to Spindler and Padilla.

17

We start by addressing service of process on the School District. Padilla concedes on appeal that he was timely "served with a single [s]ummons." Defendants' Br. at 24. Furthermore, the affidavit of service provides (and the parties agree) that Padilla "is designated by law to accept service of process on behalf of [the School District]." DC Dkt. No. 31; Joint App'x at 50. Therefore, Padilla's receipt of the summons appears to have constituted proper service of the summons on the School District. As to service of the complaint, defendants contend that a copy of the original *pro se* complaint was not provided to Padilla with the summons. Although Buon disputes that contention, we need not resolve that issue because, at the time of that dismissal, the district court had already granted Buon's request to file and serve an amended complaint, in order to cure any deficiencies with respect to the original complaint, with defendants having consented to the filing. The Amended Complaint was filed on ECF on April 1, 2020, in accordance with district court's instructions, and was then properly served on all defendants under Rule 5, even without a summons. *See* Fed. R. Civ. P. 5(b)(2)(E); 4B Wright & Miller § 1144 n.6.[4] Under these circumstances, the School

---

[4] Defendants did not argue in the district court, nor do they argue on appeal, that the Amended Complaint *itself* was not properly served on defendants by filing it on ECF. *See, e.g.*, DC Dkt. No. 38 at 4 (arguing improper service of Amended Complaint based

18

District waived its right to contest whether service of process was proper on account of the lack of service of the original *pro se* complaint by consenting to the filing of the Amended Complaint. *Cf. Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07-cv-976 (LAP), 2008 WL 4449280, at *8 (S.D.N.Y. Sept. 30, 2008). Accordingly, the Amended Complaint should not be dismissed against the School District for improper service of process.

However, with respect to Spindler, there is no evidence that she was served with a summons at the time of the service of the original *pro se* complaint, and the affidavit of service makes no reference to Padilla's authority to accept service of process on behalf of Spindler. Moreover, there is no indication, through an affidavit of service or otherwise, that a summons was subsequently served on Spindler (or her counsel) at the time of the filing of the Amended Complaint. Therefore, the district court correctly determined that Buon had failed to demonstrate proper service as to Spindler.

only on the lack of service of the summons along with the Amended Complaint). Accordingly, any argument that the Amended Complaint itself was improperly served is waived. *See, e.g.*, *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1095 (2d Cir. 1990) (holding argument regarding improper service of process was waived in the district court because "to the extent that a defense of lack of personal jurisdiction is based on delivery of the summons and complaint to a non-agent of the defendant, that basis should be clearly specified" in the responsive pleading); *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) (holding that issues not raised in the appellate brief are abandoned).

In addition, with respect to Padilla, the record is clear that he only received a single copy of the summons and it was served on him in his representative capacity for the School District. Because Padilla did not receive a second summons, and because Federal Rule of Procedure 4(b) requires "[a] summons— or a copy of a summons that is addressed to multiple defendants—must be issued for each defendant to be served," service was insufficient as to him in his individual capacity. Fed. R. Civ. P. 4(b). Accordingly, Buon has failed to demonstrate proper service as to Padilla.

As to the remedy, Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Additionally, it is well settled that "[d]istrict courts have discretion to grant extensions [under Rule 4(m)] even in the absence of good cause." *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007). The district court seems to have not considered the possibility of an extension of time to serve because it alternatively concluded that the "FAC [was] otherwise properly dismissed on the merits." Joint App'x at 51. However, because (as discussed *infra*) we conclude that the claims against the defendants survive a motion to dismiss on

20

the merits, we remand the issue of service as to Spindler and Padilla to the district court for consideration of whether an extension of time to serve the summons on them should be granted under Rule 4(m).

Although we leave the decision regarding the extension to the sound discretion of the district court in the first instance, we note that the district court should consider, among the relevant factors, Buon's assertion (which is not contested by defendants) that a dismissal without prejudice in combination with the statute of limitations would, in effect, result in a dismissal with prejudice at least of her Title VII claim. *See Zapata*, 502 F.3d at 197 (noting the need for the district court to "weigh[] the impact that a dismissal or extension would have on the parties"). Moreover, on the issue of any prejudice to Spindler and Padilla, we emphasize that there is no question that they had sufficient notice here, as they, like the School District, successfully moved to dismiss the FAC. *See generally Henderson v. United States*, 517 U.S. 654, 672 (1996) ("[T]he core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections.").

21

## II. Dismissal under Rule 12(b)(6)

On appeal, Buon challenges the dismissal of her discrimination claims under Title VII and Section 1983 based on three alleged adverse actions: (1) the January 2019 denial of the position as administrator of the RISE program; (2) the May 2019 denial of a position in the summer-school program; and (3) her termination as SMS principal in May 2019 and transfer to her prior position as an elementary school principal.[5]

The district court concluded that the Title VII discrimination claim should be dismissed under Rule 12(b)(6) because: (1) Buon failed to properly exhaust her Title VII claim with respect to the latter two alleged adverse employment actions in May 2019; (2) none of the allegations, including the properly exhausted RISE-program position denial, rose to the level of an adverse employment action; and (3) even if an adverse employment action was properly pled, Buon failed to plead sufficient facts to plausibly support the requisite inference of discrimination. The district court also dismissed the Section 1983 discrimination claim pursuant to Rule 12(b)(6), concluding that the FAC similarly failed to contain allegations that could plausibly support an inference of discrimination.

---

[5] Buon made clear in the district court that she was not pursuing either of these claims under a theory of hostile work environment.

22

We review *de novo* a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiff. *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). To survive dismissal, the pleadings must contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *i.e.*, the pleaded facts must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). In making that assessment, we "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (internal citation omitted).

We first address whether Buon satisfied Title VII's exhaustion requirement with respect to the alleged May 2019 events and then turn to whether Buon pled a plausible discrimination claim under Title VII or Section 1983 in the FAC.

### a. Exhaustion Requirements

Buon argues that the district court erred in dismissing her Title VII claim as to two of the three alleged adverse employment actions—namely, the May 2019

23

denial of an administrator position in the summer-school program and the termination of her position as SMS principal—for failure to properly exhaust with the EEOC.

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (internal citations omitted). "An employment discrimination claim must be filed with the EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency." *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599 (2d Cir. 1999) (per curiam) (citing 42 U.S.C. § 2000e-5(e)(1) (Title VII enforcement procedures)). Claims concerning discrete acts outside this window will be time barred. *See Nat'l R.R. Passenger v. Morgan*, 536 U.S. 101, 109–115 (2002). A discrete act is one that "'occurred' on the day that it 'happened'" and can include "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 110, 114. However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Deravin*, 335 F.3d at 200 (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274

24

F.3d 683, 686 (2d Cir. 2001) (per curiam) (internal quotation marks and citations omitted)).

On appeal, Buon concedes that neither her denial of a position for the summer program nor her termination from her position as SMS principal was contained in her EEOC charge, which was filed before those alleged employment decisions had even been made and was never amended. Instead, Buon argues that those discrete acts in May 2019 are reasonably related to the claims she initially asserted in the April 2019 EEOC charge, which included the denial of the RISE administrator position.

Importantly, Buon did not oppose the School District's argument in the district court that she failed to exhaust under Title VII with respect to these two alleged adverse employment actions. Thus, Buon never raised the "reasonably related" argument in the district court, and "it is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994). We recognize though that "we may exercise discretion to consider forfeited arguments." *Doe v. Trump Corp.*, 6 F.4th 400, 410 (2d Cir. 2021) (alterations adopted) (internal quotation marks and citation omitted). However, we find no reason to depart

25

from the general rule in this case, especially where Buon has failed to articulate a reason for failing to raise the issue below. *See, e.g.*, *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (per curiam) ("[T]he circumstances normally do not militate in favor of an exercise of discretion to address new arguments on appeal where those arguments were available to the parties below and they proffer no reason for their failure to raise the arguments below." (alterations adopted) (internal quotation marks and citations omitted)).

Accordingly, we affirm the district court's dismissal of the portions of Buon's Title VII claim pertaining to the May 2019 denial of the summer-program position and her May 2019 termination as SMS principal for failure to exhaust.[6]

### b. Pleading Requirements

Buon argues that the district court erred in concluding, with respect to the January 2019 denial of the RISE administrator position, the May 2019 denial of the summer program position, and the May 2019 termination of her position as SMS

---

[6] We note that this determination does not affect Buon's ability to pursue these allegations as part of her Section 1983 claim for disparate treatment because there is no exhaustion requirement under Section 1983. *See Gresham v. Chambers*, 501 F.2d 687, 690–91 (2d Cir. 1974). Thus, we will proceed to analyze whether Buon has satisfied the pleading requirements for each of the three alleged adverse actions, even though the Title VII claim is now limited to the denial of the RISE administrator position.

principal, that she failed to sufficiently plead a plausible discrimination claim under Title VII and Section 1983. We agree.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "[I]ndividuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam). Therefore, to properly assert a claim of discrimination against an employer under Title VII, a plaintiff must "allege two elements: (1) the employer discriminated against [her] (2) because of [her] race, color, religion, sex, or national origin." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).

The Fourteenth Amendment, as made actionable by 42 U.S.C. § 1983, "provides public employees with the right to be 'free from discrimination.'" *Id.* at 87 (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Feingold*

*v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "A state employee acting in his official capacity is acting under color of state law." *Vega*, 801 F.3d at 88 (internal quotation marks and citation omitted). "Once the color of law requirement is met, a plaintiff's equal protection claim parallels his Title VII claim, except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual." *Id.* (internal quotation marks and citation omitted).

We analyze Title VII and Section 1983 discrimination claims under the familiar three-step burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). First, the plaintiff must establish a *prima facie* case of discrimination. *See Vega*, 801 F.3d at 83. If the plaintiff has established a *prima facie* case, "[t]he burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the disparate treatment." *Id.* (internal quotation marks and citation omitted). "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason was in fact pretext for discrimination." *Id.* (internal quotation marks and citations omitted).

However, a "prima facie case . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Therefore, "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case," *id.* at 511, because "the precise requirements of a prima facie case can vary depending on the context," and "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case," *id.* at 512; *see also Vega*, 801 F.3d at 84 ("[O]ur decision in *Littlejohn* makes clear that a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss."). Instead, for a discrimination claim to survive a motion to dismiss, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff [(1)] is a member of a protected class, [(2)] was qualified, [(3)] suffered an adverse employment action, and [(4)] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

There is no dispute that Buon was a member of a protected class and that she was qualified for the RISE administrator position, the summer-school position, and the role of SMS principal. As set forth below, we conclude that the district

29

court erred in holding that Buon failed to plausibly allege: (1) the denials of the RISE and summer-school positions, as well as her termination as SMS principal, constituted adverse employment actions; and (2) the decisions were motivated by discriminatory intent.

### i. Adverse Employment Action

Whether claiming disparate treatment under Title VII or Section 1983, a plaintiff must plausibly allege she suffered an adverse employment action. *See Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019). "We define an adverse employment action as a 'materially adverse change' in the terms and conditions of employment." *Sanders v. N.Y.C Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal citation omitted). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks and citations omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (internal quotation marks and citations omitted).

The district court held that a "denial of an educator's request to participate in *additional* programs, including paid programs, does not constitute an adverse employment action." Joint App'x at 55 (emphasis added). As set forth below, we disagree and hold that Buon has pled plausible adverse employment actions based upon the denials of her requests to participate in additional programs—namely, the RISE-administrator position and the summer-school position—as well as her termination as SMS principal and transfer back to her position as the principal of Newburgh Elementary School.

Any decision by an employer, including the denial of a workplace opportunity that materially affects the terms and conditions of employment, can constitute an adverse employment action. *See generally Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (emphasizing that "no particular type of personnel action is automatically excluded from serving as the basis of a cause of action under Title VII, as long as the person is aggrieved by the action" (alteration adopted) (internal quotation marks and citation omitted)); *see also Lewis v. City of Chicago*, 496 F.3d 645, 654 (7th Cir. 2007) ("A strict adherence to labels leads to a meaningless cry of phrases such as 'bonus' or 'salary' without reaching the critical issue of whether the alleged discrimination caused a material change in the employment

31

relationship.").

For example, it is well settled that "failing to promote" an employee can constitute "a significant change in employment status" that is tangible and thereby qualifies as an adverse employment action under Title VII. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) (recognizing discriminatory failure to promote as "within the core activities encompassed by the term 'adverse actions'"). Similarly, it is also well settled that "firing" and "reassignment with significantly different responsibilities" constitute adverse employment actions. *Ellerth*, 524 U.S. at 761; *see also, e.g.*, *Lore v. City of Syracuse*, 670 F.3d 127, 170–71 (2d Cir. 2012) ("The transfer of an employee from an elite position to one that is less prestigious with little opportunity for professional growth is sufficient to permit a jury to infer that the transfer was a materially adverse employment action." (alterations omitted) (internal citation omitted)); *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) ("Although this transfer did not affect his wages or benefits, it resulted in a less distinguished title and significantly diminished material responsibilities, and therefore constituted an adverse employment action." (internal citation omitted)); *Rodriguez v. Bd. of Ed. of Eastchester Union Free Sch. Dist.*, 620 F.2d 362, 366 (2d Cir.

1980) (transfer of art teacher from junior high school to elementary school held to be an adverse employment action).

Furthermore, other denials of workplace opportunities that affect the terms and conditions of employment can similarly qualify as an adverse employment action. *See Jin v. Metro. Life Ins.*, 310 F.3d 84, 93 (2d Cir. 2002) (emphasizing that the list of examples contained in the Supreme Court's definition of "tangible employment actions" in *Ellerth* was "non-exclusive"). For instance, in *Demoret*, we held that, among the allegations that satisfied the requirement of an adverse employment action was a claim that a female municipal employee "was not allowed to earn overtime pay or comp time" like her male colleagues. 451 F.3d at 151; *see also Robinson v. Goulet*, 525 F. App'x 28, 31 (2d Cir. 2013) (summary order) ("The loss of overtime hours or pay on the basis of race or sex violates Title VII."); *Lewis*, 496 F.3d at 653–54 (holding that plaintiff had created a genuine issue of material of fact as to whether she had suffered an adverse employment action where, *inter alia*, plaintiff lost the potential to earn many hours of overtime by being denied a special assignment); *Bass v. Bd. of Cnty. Comm'rs*, 256 F.3d 1095, 1118 (11th Cir. 2001) (holding that an employer's "actions which deprived [an employee] of compensation which [s]he otherwise would have earned clearly

33

constitute adverse employment actions for purposes of Title VII"), *overruled in part on other grounds by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008); *Albuja v. Nat'l Broad. Co. Universal*, 851 F. Supp. 2d 599, 609 (S.D.N.Y. 2012) (holding that denial of "temporary supervisor position," which carried an increase in pay, "could constitute an adverse employment action"); *Lee v. City of Syracuse*, 603 F. Supp. 2d 417, 433 (N.D.N.Y. 2009) (stating that "allocation of overtime could qualify as an adverse action because of the loss of an opportunity for a higher salary"), *abrogated on other grounds by Widomski v. State Univ. of N.Y. (SUNY) at Orange*, 748 F.3d 471 (2d Cir. 2014).

Numerous district courts have reached the same conclusion with respect to the denial of similar opportunities to teachers. *See, e.g.*, *United States v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 365, 397 (S.D.N.Y. 2018) (explaining that a "[d]enial or loss of extra hours resulting in loss of actual income can constitute an adverse employment action" under Title VII and concluding that a reasonable jury could find such an adverse action was taken against plaintiff teachers who contended that they lost income when principal reduced their after-school hours related to theater program); *Colandrea v. Hunter-Tannersville Cent. Sch. Dist.*, No. 15-cv-456 (LEK), 2017 WL 1082439, at *5 (N.D.N.Y. Mar. 22, 2017) (holding that a teacher had

34

created a genuine issue of material of fact as to whether she had suffered an adverse employment action where she was not hired for additional positions at the school "or for any other [additional] paid work"); *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 333 (E.D.N.Y. 2014) (holding that plaintiff suffered adverse employment action when she was not assigned to teach classes as a substitute for teacher on leave and such additional duties would have resulted in increased income), *overruled on other grounds by Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86 (2d Cir. 2020); *Herling v. N.Y.C. Dep't of Educ.*, No. 13-cv-5287 (JG), 2014 WL 1621966, at *6 (E.D.N.Y. Apr. 23, 2014) ("Denying an employee the opportunity to work overtime, comp time, or additional per-session employment may also constitute an adverse employment action.").

Moreover, adverse employment actions involving denial of employment opportunities to current employees are not limited to those opportunities that involve a material increase in pay. Indeed, in *Beyer v. County of Nassau*, we held that genuine issues of material fact existed that precluded summary judgment as to whether the denial of a county police detective's request for transfer was an adverse employment action, even where the transfer would not have resulted in additional pay. 524 F.3d 160, 164–65 (2d Cir. 2008). In doing so, we emphasized

35

that "[t]he *denial* of a transfer may constitute an adverse employment action at the *prima facie* step of discrimination analysis when . . . a plaintiff adduces sufficient evidence to permit a reasonable factfinder to conclude that the sought for position is materially more advantageous than the employee's current position, whether because of prestige, modernity, training opportunity, job security, or some other objective indicator of desirability." *Id.* at 165; *see also Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (explaining that, to establish that a denial of a request to transfer was an adverse employment action, a plaintiff must show that such a denial "created a materially significant disadvantage in her working conditions"); *accord Stewart v. Ashcroft*, 352 F.3d 422, 427 (D.C. Cir. 2003) (holding that non-selection for lateral transfer from senior litigation counsel to chief of section was an adverse employment action under Title VII, even though there was no change in pay or benefits, because the decision "clearly had materially adverse consequences for his present and future employment opportunities" and "[j]ust as withdrawing an employee's supervisory duties constitutes an adverse employment action, so too failing to select an employee for a position with substantially greater supervisory authority is an adverse employment action" (internal citation omitted)); *see also Ritchie v. Napolitano*, 196 F. Supp. 3d 54, 62

36

(D.D.C. 2016) ("Applicable case law . . . makes clear that a plaintiff's ***non-selection*** for a lateral transfer or assignment constitutes a materially adverse employment action where such transfer or assignment would have brought with it increased responsibilities and/or increased promotion or future employment opportunities." (collecting cases)).

In short, under our precedent, the denial of a lateral transfer or an additional assignment can qualify as an adverse employment action if that transfer or additional assignment would have materially changed the terms and conditions of employment, such as by materially increasing the employee's pay or materially increasing the employee's opportunity for advancement.

Here, the FAC pleads sufficient facts to plausibly allege three separate employment decisions—namely, the denial of Buon's application to administer the RISE program, the denial of her application to administer the summer-school program, and the termination of her position as SMS principal—that each independently constitutes a materially adverse change to Buon's employment. Buon is not alleging that the changes were "a mere inconvenience or an alteration of job responsibilities," *Terry*, 336 F.3d at 138 (internal quotation marks and citations omitted), nor is she basing her claim on "subjective, personal

disappointments," *Williams*, 368 F.3d at 128. Instead, her claim is that due to defendants' actions she was unable to substantially increase her income and was subject to a loss of her then-current income.

Specifically, the FAC alleges that, due to each of these three employment decisions, Buon was subject to, among other things, "the loss of salary and income." Joint App'x at 22–23. For example, if selected for the RISE-administrator position, Buon, whom allegedly "had previously successfully held this position," would have earned an additional salary for the "contractual rate of $81.00 an hour for 2.5 to 3 hours, five days a week or approximately $30,000." *Id.* at 17. Moreover, as to the defendants' decision to "revert her to elementary school principal status," *id.* at 22, Buon was "deprived [] of at least $8000 in salary/year," *id.* at 21. Therefore, even apart from whether obtaining the RISE-administrator and summer-program positions and retaining the SMS principal position would have materially increased Buon's opportunities for advancement inside or outside the School District, the alleged loss of additional earnings from losing or being denied these positions is sufficient to "plausibly allege[] an adverse employment action" that survives a motion to dismiss as to each of these three employment decisions. *Vega*, 801 F.3d at 88.

### ii. Discriminatory Intent

We similarly conclude that the district court erred in holding that Buon failed to satisfy her burden, at the motion to dismiss stage, to plead sufficient facts that plausibly allege discriminatory intent either under Title VII or Section 1983.

In this Circuit, the "*sine qua non*" of a national origin or race-based discrimination suit is that the "discrimination must be *because of* [the plaintiff's protected characteristic]." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (per curiam) (internal quotation marks and citation omitted). "[A]n action is 'because of' a plaintiff's race, color, religion, sex, or national origin where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action." *Vega*, 801 F.3d at 85 (internal citation omitted). To state a claim that the discrimination was "because of" the protected characteristic at issue, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by [either] alleging facts that *directly* show discrimination *or* facts that *indirectly* show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87 (emphases added). To that end, particularly where, as here, a plaintiff has not alleged facts that directly show discrimination, we have cautioned courts to "be mindful of the elusive

39

nature of intentional discrimination" when making a "plausibility determination" at the motion-to-dismiss phase "[b]ecause discrimination claims implicate an employer's usually unstated intent and state of mind" and therefore "rarely is there direct, smoking gun, evidence of discrimination." *Id.* at 86 (internal quotation marks and citations omitted). Thus, with respect to the issue of intent, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination," but rather "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311; *accord Vega*, 801 F.3d at 86–87.

Here, Buon has met her minimal burden by alleging facts that give rise to a plausible inference of discrimination with respect to the denial of her application to administer the RISE program, the denial of her application to administer the summer-school program, and the termination of her position as SMS principal.

With regard to each of the three positions at issue, Buon alleges that she "was qualified for the position she sought or held and was either denied appointment or replaced by a person of another racial and/or ethnic group who lacked her qualifications." Joint App'x at 23. For example, as to the RISE program,

Buon alleges that, although she held the position previously, it was given in January 2019 to an individual who "was neither African American nor West Indian." *Id.* at 17; *see, e.g.*, *Littlejohn*, 795 F.3d at 313 ("The fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis, including at the pleading stage."). Buon further alleged that the individual who secured the position was a less qualified and newly hired administrator who did not hold a school-based job. *See Littlejohn*, 795 F.3d at 313 (holding that inference of discrimination was further supported by plaintiff's allegations that her replacement was not only outside her protected class but also less qualified for the position due to lack of relevant work experience). Similarly, as to the summer-school position, Buon contends that, even though she had participated in the summer program for at least the "five prior years," Joint App'x at 13, and that she "was better qualified" for the role, *id.* at 20, "defendants Padilla and the district chose much less experienced persons to administrate the district's summer[-]school program," *id.* In addition, "[o]f the five persons chosen [for the position], four were Caucasian, one was Latino, and none were African American or West Indian." *Id.*

41

Furthermore, Buon listed a series of instances of disparate treatment in the workplace where she was allegedly subjected to job requirements and to discipline that was different than employees outside her protected class. *See id.* at 54–55 (discussing allegations that, unlike employees who were not African American or West Indian, Buon was, *inter alia*: (1) "required to make phone calls to students to inform them they could not wear Halloween costumes"; (2) "required to provide timely responses to meeting invitations"; (3) "not allowed to institute certain programs at her school"; (4) "disciplined for being late"; and (5) subjected to a "negative performance review, disciplinary meetings, and other forms of criticism"). Although these alleged other instances of disparate treatment may not separately rise to the level of adverse employment actions, Buon is permitted to "[c]reat[e] a mosaic with the bits and pieces of available evidence" that, taken together, support a plausible inference of intentional discrimination with respect to the decisions to deny her application to be the RISE administrator, deny her application to work summer school, and terminate her position as SMS principal. *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998), *abrogated in part on other grounds by Ellerth*, 524 U.S. 742; *see also Vega*, 801 F.3d at 88 (explaining that "[plaintiff's] other allegations of discrimination, even if they do not independently

42

constitute adverse employment actions, provide relevant background evidence by shedding light on Defendant[s'] motivation and thus bolster [her] claim that Defendants treated [her] differently because of [her] ethnicity" (internal quotation marks and citations omitted)); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (explaining that "[a] plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably"); *Stratton v. Dep't for the Aging for the City of N.Y.*, 132 F.3d 869, 879 n.6 (2d Cir. 1997) ("Actions taken by an employer that disadvantage an employee for no logical reason constitute strong evidence of intent to discriminate."). In sum, the collective allegations in the FAC are more than sufficient to plausibly support an inference of unlawful discrimination.

In determining that Buon had failed to meet her pleading burden on the issue of intent, the district court concluded that "[Buon] and Padilla's history supports a finding of no inference of discrimination." Joint App'x at 57. In particular, the district court noted that "[t]he crux of [Buon's] FAC is that Padilla advocated for [Buon's] appointment to SMS principal, discriminated against her for the roughly two years she served in that position, and then transferred her back to an elementary school principal position within Newburgh." *Id.* In its analysis,

the district court relied on *Carlton v. Mystic Transportation, Inc.*, which explained that "[w]hen the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire." 202 F.3d 129, 137 (2d Cir. 2000) (internal quotation marks and citation omitted).

As an initial matter, we have not determined whether the same-actor inference, which we have applied in the context of age discrimination claims under the ADEA, should also apply to claims under Title VII. *See Feingold*, 366 F.3d at 155 & n.15 (declining to "pass judgment on the extent to which [the same-actor] inference is either required or appropriate outside the [ADEA] context"). However, even assuming *arguendo* that it does, *Carlton* addressed a summary-judgment motion, at which stage we have recognized that the same-actor inference may be "a highly relevant factor." *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000); *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573 (6th Cir. 2003) (describing same-actor inference as permissive, not mandatory). Indeed, at the summary-judgment stage, when the burden-shifting framework associated with *McDonnell Douglas* applies, the potential relevance of the same-actor inference is obvious: at step two of the *McDonnell Douglas* test, defendants are free to present

44

evidence establishing a non-pretextual, non-discriminatory reason for the adverse action and may invoke the same-actor-inference, and at step three plaintiffs are afforded an opportunity to rebut that evidence, along with the same-actor inference. *See, e.g.*, *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 269–71 (9th Cir. 1996).

The inference, though, is not similarly relevant at the motion-to-dismiss stage, when we are primarily concerned with whether there is "minimal support for the proposition that the employer was motivated by discriminatory intent," *Littlejohn*, 795 F.3d at 311, and not with "questions as to which the defendants bear the burden of production," such as "[w]hether there existed non-pretextual, non-discriminatory explanations for the defendants' employment decisions," *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 230–31 (2d Cir. 2014). As a result, we conclude that the inference should not be used to foreclose Title VII and Section 1983 claims at the motion-to-dismiss stage if the plaintiff has otherwise set forth allegations that support a plausible inference of discrimination. *See, e.g.*, *Colbert v. FSA Store, Inc.*,

No. 19-cv-9828 (LJL), 2020 WL 1989404, at *4 (S.D.N.Y. Apr. 27, 2020) (concluding

same).[7]

As we emphasized in *Vega*, at the motion to dismiss stage, "the question is

not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual

allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*,

whether plaintiffs allege enough to 'nudge[ ] their claims across the line from

conceivable to plausible.'" *Vega*, 801 F.3d at 87 (alteration in original) (quoting

*Twombly*, 550 U.S. at 570). Here, taking the allegations in the FAC as true and

drawing all reasonable inferences in Buon's favor, the FAC meets that pleading

standard with respect to the denial of the position for RISE administrator, the

---

[7] The district court similarly concluded that, although Buon alleged instances of disparate treatment when compared to individuals of other races and national origins that occupied the same position as Buon (that is, principal) at other schools in the School District, Buon failed "to allege that these other principals were similarly situated," and noted examples from the FAC where it did not appear the circumstances surrounding the disparate treatment were analogous. Joint App'x at 56–57. However, "[o]rdinarily, whether two employees are similarly situated presents a question of fact, rather than a legal question to be resolved on a motion to dismiss." *Brown*, 756 F.3d at 230 (alterations adopted) (internal quotation marks and citation omitted); *see also Hu v. City of New York*, 927 F.3d 81, 97 (2d Cir. 2019) (cautioning against resolving the fact-intensive inquiry of "whether two comparators are similarly situated on a motion to dismiss"). In any event, even apart from any inference of discrimination arising from these other alleged instances of disparate treatment, Buon's allegations that the individuals who secured each of the three positions at issue were both outside her protected class and less qualified are sufficient for the Title VII claim to survive a motion to dismiss. *See Littlejohn*, 795 F.3d at 313.

denial of her application to administer the summer-school program, and the termination of her position as SMS principal.

In sum, Buon has stated plausible discrimination claims under Title VII and Section 1983, and the district court erred in dismissing them. Therefore, Buon may proceed with her Section 1983 claim as to all three alleged adverse employment actions and with her Title VII claim against the School District as to the denial of the RISE administrator position (assuming *arguendo* the district court grants an extension of time to serve Spindler and Padilla and Buon effectuates proper service).

## CONCLUSION

Accordingly, we **AFFIRM** the district court's dismissal of Buon's Title VII claim to the extent the claim is based on alleged adverse employment actions in May 2019 and **VACATE** the district court's judgment to the extent it dismissed the Section 1983 claim and the remainder of the Title VII claim. The case is **REMANDED** to the district court for further proceedings consistent with this opinion, including a determination as to whether Buon should be provided with an extension of time to effectuate proper service as to Spindler and Padilla.