24-1064-cv
*Back v. Bank Hapoalim, B.M.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of November, two thousand twenty-four.

PRESENT:
            ROBERT D. SACK,
            SUSAN L. CARNEY,
            JOSEPH F. BIANCO,
                        *Circuit Judges*.

_____

SOL BACK,

                        *Plaintiff-Appellant*,

            v.                                                      24-1064-cv

BANK HAPOALIM, B.M., GIL KARNI,

                        *Defendants-Appellees*.

_____

FOR PLAINTIFF-APPELLANT:                 ALEXANDER SAKIN, Law Office of Alexander Sakin, LLC, New York, New York.

FOR DEFENDANTS-APPELLEES:                SCOTT S. BALBER (Michael P. Jones and Tyler T. Hendry, *on the brief*), Herbert Smith Freehills New York LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Edgardo Ramos, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on March 21, 2024, is **VACATED** and the case is **REMANDED** for further proceedings consistent with this order.

Plaintiff-Appellant Sol Back, a former employee of Defendant-Appellee Bank Hapoalim, B.M. ("BHI"), appeals from the district court's dismissal of her complaint against BHI and its Chief Executive Officer ("CEO"), Defendant-Appellee Gil Karni, asserting sex discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"); and a retaliation claim under New York Labor Law § 740 ("NYLL"). According to the complaint, Back was transferred out of her position at BHI for filing a written complaint in December 2021 pursuant to BHI's Whistleblower Policy, complaining that CEO Karni came to work while suffering from COVID-19 and triggered a COVID-19 outbreak at BHI, with about 30 employees (including Back) testing positive for the virus. Back alleges that at least five male executives similarly complained about Karni's behavior and BHI's lack of a proper response to the COVID-19 outbreak but were not disciplined. Her complaint further alleges other instances in which Karni treated Back differently than her male colleagues as part of a "bank-wide culture of misogyny and impunity." App'x at 14, ¶ 41.

The district court dismissed the Title VII claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), and declined to exercise supplemental jurisdiction over the NYSHRL, NYCHRL, and

NYLL claims. *See generally Back v. Bank Hapoalim, B.M.*, No. 23-CV-2040 (ER), 2024 WL 1216659 (S.D.N.Y. Mar. 21, 2024). On appeal, Back argues that the district court erred in dismissing her Title VII claim by: (1) concluding that her forced transfer did not constitute an adverse employment action; (2) rejecting her constructive discharge theory; (3) finding that the alleged five male comparators were not similarly situated; and (4) determining that her allegations of more general discriminatory conduct did not support an inference of discriminatory intent with respect to her transfer. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

"We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). To survive dismissal, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[F]or a discrimination claim [under Title VII] to survive a motion to dismiss, absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (alterations adopted) (internal quotation marks and citation omitted). There is no dispute that Back was a member of a protected class and that she was qualified for her position as the Executive Assistant to the CEO. As set forth below, we conclude that dismissal of the Title VII claim was unwarranted because Back plausibly alleged that she suffered an adverse employment

3

action, including a transfer and constructive discharge, and that her employer's actions were motivated by her sex.

## I. Adverse Employment Action

The district court determined that Back did not sufficiently allege that she suffered an adverse employment action, either by way of her forced transfer away from her position as the Executive Assistant to the CEO, or her claim of constructive discharge. We disagree.

### A. Transfer

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). At the time of the district court's decision, to adequately allege an adverse employment action, our Circuit required a plaintiff to plead that she "endure[d] a *materially adverse* change in the terms and conditions of employment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (emphasis added) (internal quotation marks and citation omitted). However, shortly after the district court issued its decision, the Supreme Court decided *Muldrow v. City of St. Louis,* 601 U.S. 346 (2024). *Muldrow* held that to allege an adverse employment action—such as an adverse transfer—the plaintiff "does not have to show . . . that the harm incurred was significant[] [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id*. at 355 (internal quotation marks and citation omitted). Instead, the text of Title VII requires only that a transferee show "*some* harm respecting an identifiable term or condition of employment." *Id*. (emphasis added). In other words, "[t]he transfer must have left her worse off, but need not have left her significantly

4

so." *Id*. at 359. *Muldrow* therefore overruled our precedent, which required that the changes to a term or condition of employment be materially adverse. *See id.* at 353 & n.1 (listing the "materially adverse" standard and similar formulations as those that require a "heightened threshold of harm").

Under the standard articulated in *Muldrow*, Back has sufficiently alleged that she was harmed when, after she was given and declined the option to either "consider a 'severance package'" or move to a different department at BHI, App'x at 25, ¶ 98, she was "transferred to the Compliance Department for a week as a 'temporary alternative,'" *id.* at 28, ¶ 115. It is reasonable to infer from the complaint that the transfer to the Compliance Department was deemed a temporary one so as to allow additional time for a permanent reassignment to be determined. According to the complaint, Back viewed the transfer away from her position as a demotion because, in her role as an executive assistant, Back acted as "a kind of Chief of Staff to the CEO" and "became the CEO's main point of contact with" BHI's highest-ranking executives and directors across the world. *Id*. at 10, ¶ 21. Thus, Back alleged that her forced transfer to another department, including the Compliance Department, was a "transfer away from the center of power" and "would be perceived by her colleagues for what it was—a demotion." *Id*. at 26, ¶ 99. Moreover, it is reasonable to infer from the complaint that Back had never worked in the Compliance Department during her time at BHI. In short, Back has plausibly alleged that the transfer negatively affected the terms and conditions of Back's employment by, *inter alia*, impairing her career advancement prospects by removing her from a position in the center of power and placing her into a role for which she lacked experience, while her transfer to another department was arranged. Under *Muldrow*, such allegations are sufficient to allege an adverse employment action that survives a motion to dismiss.

5

## B. Constructive Discharge

"An employee is constructively discharged when [her] employer, rather than discharging [her] directly, intentionally creates a work atmosphere so intolerable that [s]he is forced to quit involuntarily." *Terry v. Ashcroft*, 336 F.3d 128, 151–52 (2d Cir. 2003). In assessing whether a plaintiff articulated a constructive discharge claim, we ask whether "a reasonable person subjected to the same conditions as the plaintiff would have felt compelled to step down." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 90 (2d Cir. 1996) (emphasis omitted). "Because a reasonable person encounters life's circumstances cumulatively and not individually," *id.*, "a constructive discharge claim can be premised on the cumulative [e]ffect of a number of adverse conditions in the workplace," *Terry*, 336 F.3d at 153 n.24.

Considering Back's allegations of her working conditions cumulatively, we find that she has stated a plausible constructive discharge claim, in connection with her sex discrimination claim, that survives a motion to dismiss.[1] According to the complaint, shortly after Back filed her formal whistleblower complaint in December 2021, Karni directed executives to "reduce their

---

[1] The district court did not consider the allegations cumulatively because it concluded that "[i]ndividual non-adverse employment actions cannot be combined in an effort to establish an adverse employment action." *Back*, 2024 WL 1216659, at *5 n.6. This was error. Our constructive discharge caselaw makes clear that because "a reasonable person encounters life's circumstances cumulatively and not individually" we must consider *all* of her experienced circumstances together. *Chertkova*, 92 F.3d at 90 (considering together allegations that plaintiff was "treated coldly and arbitrarily," that her "supervisor yelled at her," "told her she would not survive," and "held over her . . . a threat of immediate termination," and concluding she made out a constructive discharge claim); *see also Terry*, 336 F.3d at 152–53 (finding that a reasonable juror could conclude that constructive discharge "resulted from the cumulative, unabated harassment that [plaintiff] experienced" without analyzing whether any single event was an adverse employment action); *Kader v. Paper Software, Inc.*, 111 F.3d 337, 340 (2d Cir. 1997) (noting that "the constructive discharge standard requires consideration of working conditions as a whole rather than one by one" and making that holistic assessment without considering whether each alleged work condition was itself an adverse employment action).

6

interactions with" her. App'x at 23, ¶ 87. Senior management ceased to interact with Back, even though they previously did so on a near daily basis. Karni also became "noticeably hostile," *id.* at 22, ¶ 82, and told Back in March 2022 during her annual bonus review: "I don't get what you are doing at your station" and that she was "not doing her job," *id.* at 24, ¶ 92.[2] That conversation "stunned" Back, and Karni's comments in the meeting "suggested, in no uncertain terms . . . that her job was in danger." *Id.* at 24, ¶ 93. A few weeks later, Back was allegedly presented with a choice of either transferring to a different department or leaving the bank altogether. The complaint further alleged that, after Back refused both options, she was forcibly transferred to the Compliance Department on a temporary basis, ostensibly until she was assigned to another department. Construing those allegations cumulatively and most favorably to Back, one could reasonably infer "that the employer made her working condition, viewed as a whole, so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Green v. Town of E. Haven*, 952 F.3d 394, 405 (2d Cir. 2020) (internal quotation marks and citation omitted); *see also id.* ("The fact that this substantive standard is an objective one . . . does not necessarily mean that what a reasonable person in the plaintiff's shoes would have felt compelled to do is determinable as a matter of law, for an objective question is often fact-specific."). Accordingly, the district court erred in finding that Back failed to adequately allege a constructive discharge in connection with her sex discrimination claim.

---

[2] The complaint alleges that, notwithstanding Karni's claim about Back's poor performance in March 2022, she had received the "MVP Award" in December 2021, "which was granted at the recommendation of senior management, including Mr. Karni." App'x at 15, ¶ 45. That award described Back "as 'the soul of BHI,' as 'a person who has been working nights, weekends and holidays all with a positive attitude and a wide smile . . . [who] exemplifies integrity, excellence and care,' and as someone about whom 'many would agree that most of what goes on [at] BHI runs smoothly because of her.'" *Id.*

7

## II.    Discriminatory Intent

With respect to discriminatory intent, we conclude that Back plausibly alleged that she suffered the alleged adverse employment actions because of her sex.

At the motion to dismiss stage, the facts "alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination, but rather need only give plausible support to a minimal inference of discriminatory motivation." *Buon*, 65 F.4th at 83 (internal quotation marks and citation omitted). A plaintiff can raise an inference of discriminatory intent "by showing that the employer subjected [her] to disparate treatment, that is, treated [her] less favorably than a similarly situated employee outside [her] protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). Whether two employees are similarly situated "varies somewhat from case to case" and "must be judged based on (1) whether the plaintiff and those [she] maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Id.* at 40. This inquiry "ordinarily presents a question of fact for the jury." *Id.* at 39. In addition, a plaintiff is permitted to rely on "other allegations of discrimination" as "relevant background evidence" to "bolster [her] claim that Defendants treated [her] differently because of [her sex]." *Vega*, 801 F.3d at 88.

Applying that standard here, the allegations are sufficient to plausibly allege discriminatory intent. Back alleged that, although five male executives also made complaints about Karni's conduct in triggering a COVID-19 outbreak at BHI, they were not disciplined or constructively discharged. Those executives included the Chief Financial Officer ("CFO") and heads of various departments at BHI. The district court determined that they were not apt comparators because

8

Back was an executive assistant while those male comparators were senior executives, *Back*, 2024 WL 1216659, at *8, but it failed to consider that Back alleged that her role was more akin to a "kind of Chief of Staff to the CEO," App'x at 10, ¶ 21. The district court also observed that none of the comparators "were alleged to report directly and exclusively to [CEO] Karni." *Back*, 2024 WL 1216659, at *8. However, Back is entitled to have reasonable inferences drawn in her favor at the motion to dismiss stage, and it is reasonable to infer that department heads and the CFO would also report directly to the CEO. Ultimately, questions regarding whether Back's and the alleged male comparators' positions, responsibilities, and chains of command were sufficiently similar are fact-intensive ones that are not appropriately resolved in this case, as a matter of law, on a motion to dismiss.

The district court further erred in concluding that it was implausible that the alleged male comparators engaged in conduct that was similar in kind to Back. The district court noted that, although Back filed a formal whistleblower complaint, the comparators did not. *Back*, 2024 WL 1216659, at *8. However, nothing in the complaint suggests that her male colleagues' complaints made "to HR or to Mr. Karni directly at management meetings, and in writing" were not equally serious or adequately comparable to Back's formal whistleblower complaint. App'x at 19, ¶ 67. Importantly, the comparators complained about precisely the same conduct by Karni close in time to when Back made her formal complaint. Thus, unlike in cases relied upon by BHI, the conduct here was not "simply too different in kind" to warrant dismissal at this early stage of the litigation. *Cooper v. Franklin Templeton Invs.*, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) (summary order).

9

Moreover, we find that the more general allegations regarding Karni's alleged discriminatory treatment of Back "provide relevant background evidence by shedding light on Defendant[s'] motivation and thus bolster [her] claim that Defendants treated [her] differently because of [her sex]." *Vega*, 801 F.3d at 88 (internal quotation marks omitted). Back alleged that Karni "would regularly scratch his crotch while standing near [her], and would order her to set his office desk for lunch and then clear his dirty plates once he was done." App'x at 14, ¶ 38. He also "routinely expected her to work into the Sabbath and during other Jewish holidays," while "Ms. Back's male colleagues . . . were regularly permitted by Mr. Karni to leave or stop working early on Fridays and in advance of Jewish holidays." *Id.* at 14, ¶ 39. Those actions "are plausibly connected to [Back's sex]," and occurred in or around the time of the alleged adverse employment actions; they "therefore provide a contextual basis for inferring discrimination." *Vega*, 801 F.3d at 89. In sum, the plausibly pled comparators, reinforced by additional background evidence of Karni's alleged discriminatory conduct, are sufficient to meet Back's burden of providing "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon*, 65 F.4th at 79 (internal quotation marks and citation omitted).

Having concluded that Back has stated a plausible Title VII claim that survives a motion to dismiss, we also vacate the dismissal of Back's NYSHRL, NYCHRL, and NYLL claims, which was based on the district court's decision not to exercise supplemental jurisdiction following the dismissal of the sole federal claim. *Back*, 2024 WL 1216659, at *9; *see Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) ("Because we remand a federal claim to the district court, we also vacate the court's dismissal of the state law claims.").

10

\*                    \*                    \*

We have considered the remaining arguments on appeal and find them to be without merit. Accordingly, we **VACATE** the district court's judgment and **REMAND** the case for further proceedings consistent with this summary order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court